## Paul Van Arsdalen
### *v.*
## Nina V. R. Vail.

On the foreclosure of a second mortgage, the premises were ordered
to be sold to satisfy, in the first place, the first mortgage, and, sec-
ondly, the second mortgage. Owing to a misunderstanding of the
solicitors of the parties, the premises, worth $2,500, were bought by the
first mortgagee for $25.—*Held,* that the sale should be set aside on the
ground of surprise and inadequacy of price, the surprise consisting in
the misunderstanding on the part of the second mortgagee, who was
the obligor in the bond secured by the first mortgage, that the bid
was for the property, subject to the first mortgage.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. S. D. Grimstead,* for complainant.

*Mr. Henry Weston,* for defendant.

The Chancellor.

By a decree of foreclosure in this court, sale of certain
mortgaged premises in New Brunswick was ordered to be

made by the sheriff of Middlesex, to pay, first, to the defendant, Mrs. Vail, the holder of the first mortgage, $1,371.50, with interest, and then to the complainant, Mr. Van Arsdalen, $3,297.75, with interest, besides his costs of suit. Mrs. Vail's mortgage was made by Mr. Van Arsdalen when he was the owner of the premises, and it was given to secure his bond to her. Subsequently to giving that mortgage, he sold the property to James Masterson, and so obtained his mortgage, which was taken for purchase-money. At the sheriff's sale under the above-mentioned decree, the property was bought by Mrs. Vail for $25, and she subsequently brought suit against Mr. Van Arsdalen on his bond for the balance of the bond debt. The bill was filed to restrain her from prosecuting that suit. At the sheriff's sale a bid of $500 was made in behalf of Mr. Van Arsdalen by Mr. Grimstead, who was acting as his attorney, but it was withdrawn, and the property was then struck off to Mrs. Vail on a bid of $25.

According to the testimony of Mr. Marryott (who was present at the sale in the interest of Mr. Van Arsdalen) and Mr. Grimstead, Mr. Adrain (Mrs. Vail's solicitor), when that bid was made, asked Mr. Grimstead whether he understood that the property was being sold subject to Mrs. Vail's mortgage; to which Mr. Grimstead replied, that he did not. Mr. Adrain then said that it was, and thereupon Mr. Grimstead said he would withdraw the bid, and withdrew it accordingly. Thereupon Mr. Adrain bid $25 for the property for Mrs. Vail, and it was struck off to her on that bid.

Mr. Holcomb, the deputy sheriff, who also was present at the sale, testifies that " Mr. Grimstead made a bid, and Mr. Adrain made some remarks that the bid was over and above their mortgage, and Mr. Grimstead said that he did not understand it that way, and then he withdrew his bid."

Schuyler Van Rensselaer, who was at the sale in the interest of Mrs. Vail, testifies that when the bid of $500 was made, Mr. Adrain asked if he was to understand that bid as being over and above Mrs. Vail's mortgage, and on

Van Arsdalen *v.* Vail.

Mr. Grimstead's replying in the negative, Mr. Adrain said that the property must be sold to bring Mrs. Vail her money, and the bid was then withdrawn.

Mr. Adrain says that when Mr. Grimstead made the bid of $500, he (Mr. Adrain) may have turned and asked him, "Is that bid over our mortgage?" And he adds that he thinks Mr. Grimstead said "No." He says that he (Mr. Adrain) then said to the sheriff that that was the second bid made by the same party (referring to a former sale of the property at which the property had been struck off to Mr. Van Arsdalen at $1,800, but which purchase Mr. Van Arsdalen was unable to complete); that there had been a great deal of delay and expense incurred by reason of the fact that the former bid had not been carried out; that that was the second sale of the property, and if the property was sold that day, those who represented Mrs. Vail wanted it distinctly understood that they were to receive the money for her mortgage. He denies that he said the property was sold subject to Mrs. Vail's mortgage, but says what he did say was that they wanted their mortgage paid. He also denies that he asked Mr. Grimstead whether the latter understood that the property was sold subject to Mrs. Vail's mortgage. He further testifies that Mr. Marryott, Mr. Grimstead and Mr. Van Arsdalen had all seen him at different times before the sale, and requested that the property should be sold subject to Mrs. Vail's mortgage, and that he had, at all times, refused to grant the request, and distinctly told them that if the property was sold, it would be sold to pay that mortgage, and not subject to it.

The property was worth at least $2,500. It rented for $384 a year, in 1877, when Mr. Van Arsdalen owned it. It is evident that there was a misunderstanding at the sale. Mr. Grimstead and Mr. Marryott both appear to have understood that the bidding on the property was over and above the amount due on Mrs. Vail's mortgage, and the deputy sheriff appears to have so understood it, also. He did not conduct the sale, however, but the sheriff himself

did it.    There was no ground for misapprehension as to the effect of the bid, in the absence of any statements in reference to it, for, under the decree, the property was ordered to be sold to pay Mrs. Vail's mortgage, and it would have been sold clear of her mortgage.    *Gihon* v. *Belleville White Lead Co., 3 Hal. Ch. 531.*

The fact that the property was sold for the trifling sum of $25 (one hundredth part of its value), is cogent evidence of the misunderstanding, and is, of itself, ground for setting aside the sale, under the circumstances.    Mr. Adrain says, in his testimony, that Mrs. Vail is, and always has been, willing to convey the property to Mr. Van Arsdalen, on receiving from him the amount of her debt, with her costs of this suit.    Mr. Van Arsdalen is, under the circumstances, entitled to relief on the ground of surprise.    On terms that he pay Mrs. Vail her costs of this suit and of the suit at law, the sale will be set aside, but the injunction against the suit at law will be dissolved.