724 A.2d 858 (1999)
319 N.J. Super. 44
FIRST TRUST NATIONAL ASSOC., as trustee, Plaintiff-Respondent,
v.
Peter A. MEROLA and Kristine Merola, his wife; and Ford Consumer Finance Company, Inc., Defendants-Respondents.
In the Matter of Mark Veltre, Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 9, 1999.
Decided March 4, 1999.
*859 Steven Kropf, Old Bridge, for appellant (Heilbrunn, Finkelstein, Heilbrunn, Alfonso, Goldstein & Pape, attorneys; Mr. Kropf, of counsel and on the brief).
Salvatore Alfieri, Matawan, for defendant-respondent Ford Consumer Finance Company, Inc. (Cleary, Alfieri & Grasso, attorneys; John G. Hoyle, III, on the brief).
Plaintiffs-respondents First Trust National Assoc., Peter A. Merola, and Kristine Merola, did not file responsive briefs.
Before Judges PRESSLER, KLEINER, and STEINBERG.
The opinion of the court was delivered by KLEINER, J.A.D.
The single and narrow question raised by this appeal is whether a second mortgagee with notice of a foreclosure sale is entitled to set aside the mortgage foreclosure sale because it failed to appear at the foreclosure sale due to its admitted error. We answer this question in the negative and, accordingly, reverse the order entered in the Chancery Division which set aside the mortgage foreclosure sale to a third-party purchaser, appellant Mark Veltre.

I
The facts are not in substantial dispute. On December 4, 1996, plaintiff First Trust National Association, Inc., the first mortgagee, obtained a final judgment of foreclosure on property at 3 Penn Road in Cranford owned by defendants Peter Merola and Katherine Merola, in the amount of $111,626.66, and counsel fees and costs of $1,277.27. Defendant Ford Consumer Finance Company, Inc. ("Ford") held a second mortgage on Merolas' property. Ford filed an answer to plaintiff's foreclosure complaint and joined in plaintiff's demand for judgment. As of the date of the final judgment, Ford was owed $93,595.74.[1]
The mortgage foreclosure sale was initially scheduled for February 26, 1997. Ford received notice of the initial sale. In its motion to vacate the foreclosure sale, it certified that in anticipation of the original scheduled sale, it retained the services of Professional Appearances, Inc., to bid up to, but not exceeding, $212,415.00 to protect its second mortgage interest and provided its agent with a check in the amount of $42,483, representing a twenty percent deposit on the highest authorized bid.
The sheriff's sale was postponed from February 26, 1997, to March 12, 1997. Ford and its agent were aware of the postponement. On March 12, 1997, Ford's agent appeared at the sale; however, the sale was again postponed until March 26, 1997. On March 26, 1997, Ford's agent again appeared at the rescheduled sheriff's sale. Those present at the sale were advised that the foreclosure *860 sale was stayed by an order entered in the United States Bankruptcy Court as a result of a bankruptcy petition filed by Peter A. Merola. Thereafter, the automatic stay by the Bankruptcy Court was lifted and the foreclosure sale was rescheduled for September 3, 1997. Plaintiff notified Ford of the rescheduled sheriff's sale prior to September 3, 1997. Ford certified that apparently its office did, in fact, receive notice of the September 3 sale, but due to clerical error, it failed to notify its agent. Ford's agent did not appear at the sheriff's sale on September 3.
On the date of the sale, Mark Veltre, who candidly admits he was aware of Ford's second mortgage based upon his personal search of the title records in the Union County Clerk's Office, and who probably was aware that Ford's agent had appeared at the previously scheduled sales of the mortgaged premises, was the highest bidder. His successful bid was $123,100. Veltre deposited $25,000 with the sheriff on that date and was required to pay the balance on September 16, 1997.
On September 10, 1997, Ford learned that the sheriff's sale had occurred on September 3, 1997, and that Veltre had been the successful bidder. On that same date, Ford filed a motion pursuant to R. 4:65-5[2] to set aside the sheriff's sale. Prior to the return date of Ford's motion, September 26, 1997, Veltre paid the balance he owed on his successful bid to the sheriff of Union County and received a sheriff's deed to the Merola property.
In the Chancery Division, Ford contended that equitable principles required the court to set aside the foreclosure sale and to require Veltre to reconvey to the sheriff the title he purchased. Ford argued: (1) but for a clerical error it would have appeared at the sale and would have bid on the Merola property in a sum in excess of any bid by Veltre; (2) it had filed its motion to vacate the sale within ten days after the sale and prior to Veltre's payment of the balance of the purchase price and prior to Veltre's receipt of the sheriff's deed; and (3) Veltre would reap a windfall because the Merola property was worth more than $220,000 and Veltre paid slightly more than $123,000.
In opposition to Ford's motion, Veltre contended: (1) subsequent to the sale, and before paying the balance of the sale price, he spoke with Kristine Merola to determine whether she intended to exercise her equity of redemption within the ten-day period following the sale; and (2) having determined that Merola did not intend to exercise her equity of redemption, he sold other real estate to raise funds needed to pay the balance owed the sheriff and incurred other miscellaneous expenses directly attributable to the purchase of the Merola property.
The motion judge concluded: (1) Veltre's sale of other real property in an effort to raise sufficient funds to purchase the Merola property did not create any special equity; and (2) although Veltre was a bona fide purchaser for value, he purchased with full knowledge of the junior encumbrance held by Ford; and (3) but for a clerical error, Ford would have appeared at the sale and would have likely been the successful bidder. The judge then concluded that it was within his discretion to set aside a sheriff's sale and order a resale of the foreclosed property, Crane v. Bielski, 15 N.J. 342, 346, 104 A.2d 651 (1954), and that under the facts presented, Ford's mistake in failing to appear at the sheriff's sale was sufficient reason for the court to exercise its discretion to vacate the sale and order a new foreclosure sale.
*861 Unquestionably, the Chancery Division has the authority to set aside a sheriff's sale and order a resale of property. Ibid. However, the exercise of this power is discretionary and must be based on considerations of equity and justice. Id. at 359, 104 A.2d 651. "While deference will ordinarily be given to discretionary decisions, such decisions will be overturned if they were made under a misconception of the applicable law." O'Neill v. City of Newark, 304 N.J.Super. 543, 550, 701 A.2d 717 (App.Div.1997) (citing Alk Assoc., Inc. v. Multimodal Applied Sys., Inc., 276 N.J.Super. 310, 314, 647 A.2d 1359 (App.Div.1994)). See also Crane, supra, 15 N.J. at 349, 104 A.2d 651; Diakamopoulos v. Monmouth Med. Cen., 312 N.J.Super. 20, 36-37, 711 A.2d 321 (App.Div.1998); Karel v. Davis, 122 N.J. Eq. 526, 529, 194 A. 545 (E. & A.1937).
In Karel, the Court of Errors and Appeals recognized that a judicial sale may be set aside "by reasons of fraud, accident, surprise, or mistake, irregularities in the conduct of the sale, and so on," but cautioned that a judicial sale is not ordinarily vacated "on the ground of mistake flowing from [a moving party's] own culpable negligence." 122 N.J. Eq. at 528, 194 A. 545.
Karel represents an overview of those decisions, many from the nineteenth century, which reflected an intent to protect a mortgagor, particularly in those instances where the mortgagor's home was being foreclosed, and to protect all parties in interest where the mortgage foreclosure process was fraught with some deficiency which deprived an interested party of sufficient notice of the proceedings. See Kirkpatrick v. Corning, 48 N.J. Eq. 302, 24 A. 441 (E. & A. 1891) (holding that purchasers at judicial sales subject themselves to the court's power to guard on equitable terms against hardship, surprise, mistake, misrepresentation, or undue advantage, even though purchasers are not at fault). See also Heintze v. Bentley, 34 N.J. Eq. 562, 567-68 (E. & A. 1881) (setting aside a sheriff's sale because the mortgage as recorded contained inaccurate information influencing the second mortgagee's decision not to bid at sheriff's sale); Mutual Life Ins. Co. v. Goddard, 33 N.J. Eq. 482, 484 (Ch. 1881) (setting sheriff's sale aside because mortgagor relied upon a representation by the mortgagee that the sale would be postponed but the sale proceeded as originally scheduled); Van Arsdalen v. Vail, 32 N.J. Eq. 189, 190-91 (Ch. 1880) (invalidating sheriff's sale due to a misunderstanding amongst all bidders that the mortgage sale was subject to other mortgages of record); Dawson v. Drake, 29 N.J. Eq. 383, 384 (Ch. 1878) (nullifying sheriff's sale since the second mortgagee relied upon incorrect representations of the first mortgage and failed to attend the sheriff's sale); Rea's Executor v. Wheeler, 27 N.J. Eq. 292 (Ch. 1876) (finding sheriff's sale invalid as mortgagee's agent failed to attend sale justifiably believing that another agent had been appointed to attend but did not due to illness); Campbell v. Gardner, 11 N.J. Eq. 423, 428 (Ch. 1857) (setting aside sheriff's sale because an elderly mortgagor failed to fully comprehend the notice served upon her). The equitable concerns of those precedents have influenced more recent decisions. See Crane, supra, 15 N.J. at 349, 104 A.2d 651 (1954) (finding that an aged and distraught widow did not have adequate notice of the time of sale, thus rendering the sheriff's sale invalid); Assoulin v. Sugarman, 159 N.J.Super. 393, 395, 388 A.2d 260 (App.Div.1978) (voiding the sheriff's sale because the owner received inadequate notice of sale conducted to satisfy a creditor's default judgment and the purchaser was the creditor's attorney acting in his individual capacity). After an exhaustive search of the current case law, we conclude that the precedent set in the nineteenth century has not changed.
Although our courts will set aside a sheriff's sale for fraud, accident, surprise, or mistake, irregularities in the conduct of the sale, or for other equitable considerations, Karel, supra, 122 N.J. Eq. at 528, 194 A. 545, inadequacy of price is not sufficient alone to justify equitable relief. Crane, supra, 15 N.J. at 348, 104 A.2d 651; Karel, supra, 122 N.J. Eq. at 530, 194 A. 545. Hazzard [Hazard] v. Hodge [Hodges], 17 N.J. Eq. 123, 124-25 (Ch. 1864) (refusing to set aside sheriff's sale, finding sale yielded a deflated price but owner who mistakenly believed the sale would be postponed received actual notice *862 of the error with sufficient time to appear at the sale to protect his interest).
In granting relief in this case, the Chancery judge noted that Veltre's prospective windfall was not sufficient to shock the judicial conscience so as to warrant the relief requested by Ford. See Carteret Savings and Loan Ass'n v. Davis, 105 N.J. 344, 351, 521 A.2d 831 (1987) (finding that foreclosure sales rarely bring fair market value prices and that eighty-nine percent are purchased through nominal bids under $300). However, the Chancery judge did grant the relief noting that Veltre could not be considered a bona fide purchaser since he was aware of Ford's interest and also noting that Ford had acted expeditiously in filing its motion to set aside the sale after discovering its agent's error in failing to attend the sale. The fact that Ford acted expeditiously does not equate with the mortgagor's duty to object to the sale and to serve a notice of objection within ten days of the sale upon all persons in interest. See R. 4:65-5; Hardyston Nat. Bank v. Tartamella, 56 N.J. 508, 267 A.2d 495 (1970). The clear import of Hardyston, as we read that decision, is its explanation that R. 4:46-5 was designed to afford a mortgagor an opportunity to exercise an equity of redemption and "shift[ing] the burden of going forward to the objector and [obviating the need for] the entry of a formal order confirming [a] sale." Id. at 511, 267 A.2d 495. Thus, under the facts presented, we deem it irrelevant that Ford acted expeditiously as Ford had no cognizable basis to object to the sale to Veltre as conducted by the sheriff.
The reasons ascribed by the judge were clearly insufficient to warrant use of his equitable powers. Although Veltre was aware of Ford's interest in the Merola property, we view his knowledge of the property's status as prudent. Veltre had no responsibility to communicate with Ford prior to the sale to assure Ford's presence. Veltre did not mislead Ford or cause Ford not to attend this foreclosure sale. As noted in Karel, Ford's failure to attend this foreclosure sale was a result of its own culpable negligence. Karel, supra, 122 N.J. Eq. at 528, 194 A. 545. Veltre, as a stranger to the foreclosure proceeding, should not have any greater duty than a first mortgagee who is not obligated to protect the interests of a junior mortgagee. See National Community Bank v. Seneca-Grande, 202 N.J.Super. 303, 311, 494 A.2d 1043 (App.Div.1985) (refusing a junior encumbrancer's application to vacate a sheriff's sale to a first mortgagee who "was not obligated to seek bidders" and recognizing that it was "the province of [the junior encumbrancer] or any other interested party to attract additional bidders ... to [bid] in excess of amount owed to the bank so that junior lienors or the owner could be paid").
Here, the first mortgagee fully complied with the notice requirement in R. 4:65-2. Ford, as an interested party, was given adequate and timely notice of this foreclosure sale. The sale was conducted without any irregularity. Veltre, although having notice of Ford's interest in the property, like any stranger to the proceedings, was entitled to appear and bid. Veltre's successful bid and the delivery to him of a sheriff's deed may not be set aside simply to rectify the error of a careless second mortgagee who fails to notify its agent. The judge's order requiring Ford to pay restitution to Veltre for those expenses he incurred and would incur in reconveying title to the sheriff does not remedy the underlying judicial error. See Jersey Shore Savings and Loan Assoc. v. Edelstein, 219 N.J.Super. 664, 669, 530 A.2d 1320 (Ch. Div.1987) (ordering restitution where sheriff's sale was set aside).
As noted in Karel v. Davis:
For obvious reasons, public policy ordains that the power to set aside judicial sales based upon competitive bidding should be sparingly exercised. The integrity of the process, designed as it is to secure the highest and best price in cash then obtainable for the property, demands that a sale so conducted shall be vacated only when necessary to correct a plain injustice. Thus it is that in such matters the court is enjoined to exercise a sound discretion, guided by considerations of justice and equity and not by whim or caprice.

[122 N.J. Eq. at 529, 194 A. 545.]
Reversed and remanded to the Chancery Division to enter a judgment confirming the *863 sheriff's sale to Veltre and for such other action as is required to effectuate the sale.
NOTES
[1] Ford's second mortgage was dated January 17, 1995, in the amount of $105,242.64.
[2] R. 4:65-5. Sheriff's Sale; Objections, provides:

A sheriff who is authorized or ordered to sell real estate shall deliver a good and sufficient conveyance in pursuant of the sale unless a motion for the hearing of an objection to the sale is served within 10 days after the sale or at any time thereafter before the delivery of the conveyance. Notice of the motion shall be given to all persons in interest, and the motion shall be made returnable not later than 20 days after the sale, unless the court otherwise orders. On the motion, the court may summarily dispose of the objection; and if it approves the sale and is satisfied that the real estate was sold at its highest and best price at the time of the sale, it may confirm the sale as valid and effectual and direct the sheriff to deliver a conveyance as aforesaid.