NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1294-13T3

GMAC MORTGAGE, LLC,

    Plaintiff-Respondent,

v.

TAMILYNN WILLOUGHBY,

    Defendant-Appellant.

_____

> Argued December 17, 2014 – Decided April 8, 2015
>
> Before Judges Waugh and Carroll.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, General Equity Part, Monmouth County, Docket No. F-19159-06.
>
> Meghan Chrisner-Keefe argued the cause for appellant (Denbeaux & Denbeaux, attorneys; Ms. Chrisner-Keefe and Joshua W. Denbeaux, on the brief).
>
> Jaime R. Ackerman argued the cause for respondent (Zucker, Goldberg & Ackerman, LLC, attorneys; Ms. Ackerman, of counsel and on the brief).

PER CURIAM

Defendant Tamilynn Willoughby appeals from orders of the General Equity Part concerning the foreclosure of the mortgage on her residence by plaintiff GMAC Mortgage, LLC., and its successor in interest. We affirm.

We discern the following facts and procedural history from the record on appeal.

Willoughby purchased a residential property in Union Beach in 2001. In February 2006, she refinanced her mortgage and obtained a new loan from Security Atlantic Mortgage Corporation, Inc. She signed a note in the amount of $183,000, as well as a new mortgage. The note and mortgage were subsequently assigned to GMAC.

Willoughby defaulted on the note in June 2006, when she failed to make a monthly installment payment. She continued to miss payments until GMAC commenced this foreclosure in October 2006. In August 2007, a final judgment of foreclosure was entered in favor of GMAC in the amount of $205,915.30.

In September 2009, Willoughby sought an order to show cause (OTSC) seeking to stay the sheriff's sale. The sale was adjourned and the judge allowed Willoughby to file an application for mediation.

On May 25, 2010, the parties mediated and agreed upon a provisional mortgage modification plan. On the same date, they memorialized the material terms of the agreement in a settlement memorandum. The agreement required Willoughby to make "a down payment of $6,000" by June 7, 2010. GMAC was to adjourn the sale for six weeks, on receipt of the first payment, followed by

further adjournments of twenty-eight days upon each subsequent payment.

On June 7, 2011, AMS Servicing, LLC, (AMS), GMAC's servicing agent, sent Willoughby an offer to enter into a permanent modification, together with the documents to effectuate acceptance of the offer. The proposal called for the first payment by June 24, and established a modified maturity date of March 1, 2036. Willoughby did not accept this offer. On December 5, AMS sent Willoughby a second offer of modification with slightly different terms. Willoughby again failed to accept the offer. Finally, in May 2012, AMS sent its final offer for modification, again with slightly different terms, and again Willoughby failed to accept it.

In the interim, Willoughby continued to make monthly payments in the amount of $1814.78. On August 30, however, AMS sent Willoughby a letter returning her mortgage check and notifying her that it was referring the mortgage for foreclosure because she had failed to accept the permanent modification.

On September 12, Willoughby filed a pro se motion seeking enforcement of the May 2010 interim agreement. On September 28, the trial judge declined to enforce the 2010 agreement and ordered the parties to reenter mediation. At the mediation on October 4, GMAC made the following offer to Willoughby:

The following terms have been offered today:

> unpaid principle balance $181,783.82, interest rate of 6.125%, 360 month term. Payments to begin on December 1, 2012 in approximate amount of $1805. By November 1, borrower to make down payment of approx. $3630 (representing the 2 returned payments). If 24 consecutive on time payments are made, lender would waive approx. $18,000 in interest. This would not be a balloon [modification], but approx. $2500 due on maturity in interest. Approx. $10000 are being held in suspense, which would be applied.
>
> [(Emphasis added.)]

During the mediation, Willoughby made the following counter offer:

> I will accept a permanent modification offer with the following terms.
> Application of $10,800 +/— suspense to escrow [balance].
> No down payment.
> [Principle balance] 181,783.82
> Interest Rate 5%
> Term 360 mos
> First payment due 12/1/2012
> Waiver of $78k interest Upon Signing No 24 [Month] Trial
> Balloon at end of 360 months $24k w/o interest
> Once modified lender will contact all credit bureaus to [correct] borrowers credit.
>
> [(Emphasis added.)]

Willoughby subsequently described the five percent interest rate in her counteroffer as the most important term for her.

The parties agreed that they would have until November 21 to respond to their respective offers. If an offer were accepted, implementing documents would be sent to Willoughby by

December 11. The parties agreed that there would be no further mediation.

GMAC declined Willoughby's counteroffer via email. Willoughby did not respond to GMAC's offer. Although Willoughby sought to make a counteroffer on December 3, it was rejected based on the agreement that there would be no further negotiations.

On December 6, Willoughby went to the office of GMAC's attorney, seeking to accept GMAC's offer. She offered two cashier's checks, each in the amount of $1814.78. The attorney told her the modification documents would be sent to her home. Her acceptance of GMAC's offer was memorialized in an email sent by GMAC's attorney to the court and all interested parties. The documents were prepared and sent to Willoughby. However, Willoughby failed to execute them. GMAC then rescinded the offer.

In January 2013, GMAC filed a motion to substitute FRT2001-1 Trust (Trust) as the plaintiff, and to allow the sheriff's sale to proceed. Willoughby filed a cross-motion seeking to collect the proceeds of an insurance claim resulting from Superstorm Sandy and to enforce settlement. She attached an agreement purporting to be the final modification document sent to her by GMAC's attorney as an exhibit to her motion. However, the terms of the document submitted by Willoughby differed

significantly from the modification agreement Willoughby had accepted.

On February 22, the trial judge scheduled a plenary hearing to determine whether Willoughby was entitled to the insurance proceeds and to enforce the settlement. He also allowed the sheriff's sale to proceed, following compliance with the filing of a certificate of diligent inquiry by the Trust. The plenary hearing was adjourned several times, and ultimately did not take place.

On August 23, the parties appeared for oral argument before a new General Equity judge. Willoughby argued for enforcement of the May 2010 provisional agreement, rather than enforcement of the permanent modification agreement attached to her motion papers. The judge found that there was no permanent mortgage modification because Willoughby had failed to sign the implementing documents. The judge also denied Willoughby's application to enforce the provisional agreement, which by its terms was to have been replaced by a permanent modification of the mortgage. Finally, the judge denied Willoughby's application for payment of the insurance proceeds to her.

Willoughby moved for reconsideration, again seeking enforcement of the May 2010 provisional agreement. The judge heard argument on October 25, and determined that there was no basis to reconsider the prior decision because a settlement had

A-1294-13T3

not been reached and because Willoughby sought enforcement of a different agreement than she had sought in her underlying motion. The judge also denied Willoughby's request for an accounting of the loan, determining that the request was not properly before her.

The sheriff's sale was scheduled for November 4. The Trust's attorney sent Willoughby a letter notifying her of the sale date. Willoughby's attorney sought to file an OTSC to stay the sale, but failed to pay the required filing fee. Willoughby applied to us for emergent relief, which we denied on November 4. The sale proceeded as scheduled.

Willoughby's statutory redemption period was to expire on November 14. On November 11, she filed a motion objecting to the sale. Willoughby then withdrew the motion, and sought entry of an OTSC setting aside the sale. On November 20, the judge held an initial hearing on the application. She granted no interim relief, but scheduled the return date of the OTSC for December 19. The judge denied Willoughby's request for an extension of her redemption period, which relief was not contained in her application for the OTSC.

The judge held oral argument on December 19. She rejected Willoughby's argument that she did not have proper notice of the date of the sale and that the sale price was inadequate. The judge found that Willoughby had not presented any evidence

warranting vacation of the sheriff's sale.  The judge determined that "It is obvious to me and it's clear to me that [Willoughby] knew what the sale date was.  She was notified by the sheriff.  She was notified by the plaintiff.  And she chose not to appear or she chose not to do something."  On January 14, 2014, the judge entered an order denying the relief sought in Willoughby's OTSC.  This appeal follows.

II.

Willoughby argues on appeal that the General Equity judge erred in determining that there was no mortgage modification agreement, in failing to hold a plenary hearing, in refusing to order an accounting, and in denying her application to set aside the sheriff's sale.

We conclude that there was no need for a plenary hearing.  A trial or factfinding hearing is only required when there are genuine issues of material fact.  "The inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'"  Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)).

The provisional agreement was not enforceable on a permanent basis because it was, as its name implies, a temporary

agreement to be replaced by a permanent mortgage modification signed by the parties. It is clear from the record that Willoughby never accepted GMAC's offer of a permanent loan modification. She never signed the documents tendered by GMAC to implement its offer, although she had several opportunities to do so. Instead, she made counteroffers seeking terms more favorable to her, particularly with respect to the interest rate. A "counteroffer operates as a rejection because it implies that the offeree will not consent to the terms of the original offer and will only enter into the transaction on the terms stated in the counteroffer." Berberian v. Lynn, 355 N.J. Super. 210, 217 (App. Div. 2002). There was never a meeting of the minds with respect to the essential terms of a permanent modification agreement. Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992). Because we find no error with respect to the judge's initial decision, the motion for reconsideration was properly denied.

The Chancery Division has the authority to set aside a sheriff's sale and order a resale of the property in the exercise of its discretion, based on considerations of equity and justice. First Trust Nat'l Assoc. v. Merola, 319 N.J. Super. 44, 49 (App. Div. 1999). "The general rule is that when insufficient notice of a sheriff's sale is given, the preferred remedy is that which restores the status quo ante to the

greatest extent possible." New Brunswick Sav. Bank v. Markouski, 123 N.J. 402 (1991). The court may void the sale if the party seeks relief promptly, was unaware of the pending sale, and no innocent third parties would be prejudiced. Ibid. A judicial sale may be set aside for fraud, accident, surprise, mistake, irregularities in the conduct of the sale, or for other equitable considerations. Merola, supra, 319 N.J. at 50.

Willoughby acknowledges that she received notice from the sheriff that the sale would occur on November 4, 2013. Counsel for plaintiff also notified Willoughby of the November 4 date. The sale took place on that date.

We find no error in the judge's refusal to grant relief based on a screenshot allegedly taken from the Monmouth County Sheriff's Department website showing a December 9 sale date. The website clearly states that the Sheriff's Office "does not warrant the accuracy, completeness, or timeliness of [the posting]." In addition, Willoughby did not contend that she had been notified of a December 9 date by the Sheriff or the Trust. She also acknowledges that, on November 4, the sale was listed for that day on the Sheriff's Office website. We find it telling that Willoughby's application for an OTSC was not accompanied by a certification signed by her and alleging that she would have appeared at the sale on November 4 but did not do so because she believed the date had been adjourned, or

asserting that she had sufficient funds to bid at the sale whenever it was held.

Willoughby also argues that the sale price at the sheriff's sale was inadequate. We have held that "inadequacy of price is not sufficient alone to justify equitable relief." Ibid.

The remaining issues raised on appeal are without merit and do not warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION