**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1979-23

SB PB VICTORY, L.P.,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

TONNELLE NORTH BERGEN,
LLC, and THOMAS F. VERRICHIA,

      Defendants-Appellants/
      Cross-Respondents,

and

UNITED CANDY & TOBACCO,
INC., NORTHWEST EXPLOSIVES
CORP., and PERSISTENT
CONSTRUCTION, INC.,

      Defendants-Respondents.

_____

Argued December 5, 2024 – Decided January 27, 2025

Before Judges Mawla and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. F-013346-22.

Jan Alan Brody argued the cause for appellants/cross-respondents (Carella, Byrne, Cecchi, Brody & Agnello, PC, attorneys; Jan Alan Brody and Brian H. Fenlon, on the briefs).

Gary F. Eisenberg (Perkins Coie, LLP) argued the cause for respondent/cross-appellant.

PER CURIAM

In this foreclosure matter, defendants Tonnelle North Bergen, LLC and Thomas F. Verrichia, Tonnelle's managing partner, (collectively defendants) appeal from an order entered on January 22, 2024, denying their motion to set aside and vacate the Sheriff's sale of commercial property to plaintiff SB PB Victory, L.P., the mortgagee. Defendants argue the court erred in setting fifteen percent as the post-judgment interest rate used to calculate the final judgment, and in denying defendants' motion to set aside the sale to plaintiff because the Sheriff's notice of sale did not state the approximate amount of plaintiff's judgment. We affirm.

I.

The relevant facts are derived from the record and are substantially undisputed. On August 30, 2019, defendants executed a promissory note and

construction loan agreement in favor of plaintiff in the amount of $17,221,780 with the maturity date of November 30, 2020.[1]  The mortgage encumbers real property known as 7408-7416 Tonnelle Avenue, North Bergen and includes the buildings and improvements.

The loan documents—guaranty agreement, note, loan agreement, and mortgage—provide that if any sum payable under the loan documents is not paid in full within fifteen days after the date on which it is due, "Tonnelle shall pay a late charge equal to five percent . . . of such delinquent payment."  The documents also provide that "upon the occurrence of an event of default that remains uncured, the whole principal sum then due shall bear interest at a default rate in an amount equal to [fifteen percent]."

On December 12, 2019, plaintiff sent a notice of default to defendants for allegedly breaching the loan agreement.  The parties agreed to binding arbitration to resolve issues regarding whether defendants had paid according to the note and breached the loan agreement.  In arbitration, the parties stipulated to the issues that would be decided in Phase I and Phase II.  Phase I addressed the following issues:

> 1.    Was the [p]romissory [n]ote dated August 30, 2019[,] and entered into between Tonnelle and

---

[1]  Defendant Verrichia executed and delivered the guaranty agreement.

[plaintiff] (the "[n]ote") paid in full by the [m]aturity [d]ate, and is the entirety of the principal and interest due in full?

2. Was there a breach of the [c]onstruction [l]oan [a]greement dated August 30, 2019[,] and entered into between Tonnelle and [plaintiff] (the "[l]oan [a]greement") because the refinancings contemplated under Section 4.27(b) of the [l]oan [a]greement did not occur, and, if so, who was in breach?

3. Was there a breach under Section 4.28(b) of the [l]oan [a]greement for failing to pledge to [plaintiff] all of . . . Verrichia's direct and indirect partnership interest in the Morrisville Project?

Phase II addressed damages, pre-judgment interest, and attorney's fees and costs. Plaintiff filed a foreclosure complaint on December 9, 2022, and both arbitration and the complaint proceeded simultaneously.[2]

On April 23, 2022, the arbitrator issued the Phase I Interim Award "in favor [of plaintiff] on its claim for breach of [n]ote against Tonnelle and for breach of the [g]uaranty against Verrichia." Plaintiff was awarded "the principal sum of $16,573,835.18, plus pre-judgment interest commencing December 1,

---

[2] The decision to submit to binding arbitration did not obviate the need for plaintiff to seek foreclosure in state court, which has exclusive jurisdiction to adjudicate foreclosure complaints. See Highland Lakes Country Club & Cmty. Ass'n v. Franzino, 186 N.J. 99, 106 n.2 (2006) ("The broad statutory framework set forth in N.J.S.A. 2A:50-1 to -68, establishes the basis for foreclosure of mortgages."); see also R. 4:64-1 to -8 (establishing rules specific to foreclosure proceedings).

4

2020[,] through January 5, 2022[,] in the amount of $2,762,141.11, jointly and severally against Tonnelle under the [n]ote and Verrichia under the [g]uaranty."

On February 22, 2023, plaintiff and defendants jointly filed a stipulation and judgment confirming the Phase I Interim Award in the United States District Court of the Eastern District of Pennsylvania. The confirmation of the arbitration award included "post-judgment interest on the [p]rincipal [s]um at a rate of [fifteen percent] per annum commencing on January 6, 2022[,] until payment."

On April 6, 2023, plaintiff moved for entry of final judgment of foreclosure with the Office of Foreclosure (OOF). On April 26, 2023, OOF denied plaintiff's application for final judgment of foreclosure because an order striking defendants' contested answer had not been filed. OOF also sought clarification of the amount in late charges sought.

On May 10, 2023, plaintiff again moved for final judgment of foreclosure, certifying the amount due with the full amount of the arbitration award, $19,335,976.29, and post-judgment interest at the contract rate for the post-judgment period accruing at a per diem rate of $6,905.76. On May 19, 2023, defendants filed an objection, which they withdrew on June 9, 2023, the same

A-1979-23

day the Chancery Division entered the final judgment of foreclosure in plaintiff's favor. The judgment stated:

> And it further appearing that [p]laintiff's [n]ote, [m]ortgage[,] and other loan documents set forth in the [f]oreclosure [c]omplaint, have been presented and marked as [e]xhibits by the [c]ourt; and that proofs have been submitted of the amount due on [p]laintiff's [n]ote and [m]ortgage; and that there is presently due and owing to the [p]laintiff under the [n]ote and [m]ortgage more particularly described in the [f]oreclosure [c]omplaint for the aggregate sum of $21,501,343.47 as of April 5, 2023, together with lawful interest thereafter on all sums due, together with costs to be taxed, including lawful counsel fees
>
> . . . .
>
> Plaintiff is entitled to have the sum of $21,501,343.47 as of April 5, 2023, <u>together with lawful interest</u> thereafter on the total sum due [p]laintiff until the same be paid and satisfied, together with costs of this suit to be taxed, including attorneys' fees in the sum of $7,500, all to be raised and paid in the first place out of the mortgaged premises . . . .
>
> [Emphasis added.]

Meanwhile, Phase II arbitration was ongoing. Consistent with the Phase I Interim Award, the arbitrator awarded post-judgment interest at the default rate of fifteen percent on June 20, 2023. The total Phase II Final Award then included "$5,127,443.48, plus post-award and post-confirmation interest at the [d]efault [r]ate as calculated at the time of confirmation of the award." On

6

November 30, 2023, the Eastern District of Pennsylvania confirmed the Phase II Final Award with post-award interest in the amount of fifteen percent per annum from June 20, 2023, until the judgment could be satisfied.

The Sheriff scheduled the sale of the mortgaged property for September 7, 2023, pursuant to a writ of execution issued by the court. The August 31, 2023 notice of foreclosure sale stated the approximate judgment to be satisfied is $29,563,967.11 plus Sheriff's execution fees.

Defendants exercised two statutory adjournments delaying the sale, which was rescheduled for November 2, 2023. On November 1, 2023, defendants moved for an emergency stay, offering "to refinance imminently and pay the foreclosure judgment amount." The court granted a stay until December 14, 2023, but defendants were unable to secure financing.

On December 14, 2023, the Sheriff's sale proceeded. The Sheriff calculated the final judgment amount based on the post-judgment interest at fifteen percent per annum and the notice and advertisement of the foreclosure sale stated the approximate amount of the judgment to be satisfied is

A-1979-23

$25,664,194.21, excluding judgment interest and Sheriff's fees.[3]  Plaintiff was the bidder, and ultimately paid $100 for the property.

On December 26, 2023, the expiration date of the redemption period, defendants filed a notice of motion to set aside the Sheriff's sale in the Chancery Division, arguing the following:  (a) the foreclosure judgment fixes the post-judgment interest rate at "lawful interest,"—lawful interest for calendar year 2023 was 2.25% and the Sheriff used the higher rate of fifteen percent, which had a "negative" effect on bidding, and (b) "the Sheriff's posted notices and advertisements did not include the approximate amount of the judgment and had a negative effect on bidding."

On January 22, 2024, in an oral decision, the court denied defendants' motion to set aside the Sheriff's sale.  The court stated "the standard [it would] apply is fraud, accident, surprise, mistake[,] or irregularities in the conduct of the sale."  And, "the sole instance of the 'irregularity' is the inconsistent posting of the judgment amount first at [$29] million and change, then [$25] million and change.  And, by the defendant's meticulous calculation, the correct amount is closer to [$21] million and change."  The court explained that when discussing

---

[3]  The difference between the amount posted in the August 31, 2023, and the December 14, 2023, notices of sale is $3,899,772.09.

numbers of "this magnitude," the difference in the two prices is "well under [ten] percent, and it's actually under [six] percent." Because the requirement under Rule 4:65-2 is the notice of sale "shall state the approximate amount of the judgment," the court concluded "if people came within [5.5% or 6%] of a static figure on any transaction, that would be within the margin of error and certainly considered a reasonable approximation."

The court further explained, "[t]he post-judgment per diem interest from my view is an issue to be resolved at the time of final judgment. And . . . it was a result of an arbitrator's decision in this case." The court concluded "lawful interest versus contract interest is a distinction that has really no effect at all. Lawful interest includes contract interest," and "[t]his matter when it went to final judgment did so uncontested. Whatever objection was crafted at the time was later withdrawn. And that was almost a year ago." The court found "[t]here is no fraud. There is no mistake or surprise. And . . . the 'irregularity' is de minimis." The court entered final judgment with the post-judgment interest rate of fifteen percent but granted defendants' application for stay pending appeal.

On February 14, 2024, plaintiff filed a notice of motion to dissolve the stay "unless defendants post a supersedeas bond and for other relief." On February 22, 2024, defendants filed a notice of cross motion to extend the stay

from the date of the filing of the notice of appeal until the final resolution of their appeal.

On March 1, 2024, the court granted plaintiff's motion to dissolve the stay unless defendants post a supersedeas bond of $645,000 within one-business day of the order. The same day, however, the court issued a separate order also setting the supersedeas bond amount at $645,000, but giving defendants sixty days to post the bond, stating "[t]he stay pending the filing by [d]efendants of their notice of appeal is hereby extended from the date they file their notice of appeal until the final resolution of [d]efendants' appeal." On March 6, 2024, defendants appealed.

On March 19, 2024, plaintiff cross-appealed.[4] And, on March 26, 2024, plaintiff moved to dissolve the stay and compel the Sheriff to deliver the deed. On April 12, 2024, the court denied plaintiff's motion.

On May 1, 2024, plaintiff moved to compel the Sheriff to deliver the deed or in the alternative, declare that there is no stay. On May 13, 2024, defendants filed their objection and cross-moved to extend the time to post the supersedeas bond. On May 23, 2024, defendants moved before us to extend the time to post the supersedeas bond. On May 30, 2024, we denied defendants' motion to

---

[4] In its appellate brief, plaintiff concedes its cross-appeal is moot.

 A-1979-23

extend time to post the supersedeas bond, holding "[t]he request for an extension of time to post a supersedeas bond should be directed to the trial court."

On May 31, 2024, plaintiff filed an order to show cause to dissolve the stay and compel delivery of the deed and defendants again cross-moved requesting an extension of the stay and additional time to post the supersedeas bond. On June 20, 2024, the court granted plaintiff's motion to dissolve the stay and compel delivery of the deed and denied defendants' cross-motion, holding "the passage of time demonstrates that inability or unwillingness of the movant to post the bond that was subject of prior orders. [The m]oving party has squandered the stay period and never posted the bond." On June 27, 2024, defendants moved before us for emergent relief seeking to stay the Sheriff's sale, which we denied.

On appeal, defendants argue the post-judgment interest rate is the legal rate prescribed by Rule 4:42-11, the Sheriff's notice of sale did not state the approximate amount of the judgment, and the requirement of the second stay pending the filing of defendants' appeal ordering that defendants post a supersedeas bond in one-business day was manifestly unreasonable. We are unpersuaded by these arguments.

11

## II.

We review the court's decision to set aside a sheriff's sale for an abuse of discretion. United States v. Scurry, 193 N.J. 492, 502-03 (2008). An "abuse of discretion" occurs when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacaso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

It is well-settled that courts have the authority to set aside a Sheriff's sale "for fraud, accident, surprise, or mistake, irregularities in the conduct of the sale, or for other equitable considerations." First Tr. Nat. Ass'n v. Merola, 319 N.J. Super. 44, 50 (App. Div. 1999) (citing Karel v. Davis, 122 N.J. Eq. 526, 528 (E. & A. 1937)). "[T]he exercise of this power is discretionary and must be based on considerations of equity and justice." Id. at 49 (citing Crane v. Bielski, 15 N.J. 342, 349 (1954)). Despite the court's broad discretion to employ equitable remedies, the power to set aside a Sheriff's sale should be "sparingly exercised." Id. at 52.

A trial judge's legal interpretations are not entitled to the same level of deference. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366,

12

378 (1995). An appellate court undertakes an independent "interpretation of the law and the legal consequences that flow from established facts." Ibid. Interpretation and construction of a contract is a matter of law for the court subject to de novo review. Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998).

Rule 4:42-11(a)(iii) provides:

> (a) Post[-]Judgment Interest. Except as otherwise ordered by the court or provided by law, judgments, awards and orders for the payment of money, taxed costs and attorney's fees shall bear simple interest as follows:
>
> . . . .
>
> (iii) For judgments exceeding the monetary limit of the Special Civil Part at the time of entry: in the manner provided for in subparagraph (a)(ii) of this Rule until September 1, 1996; thereafter, at the rate provided in subparagraph (a)(ii) plus [two percent] per annum.
>
> Post-judgment interest may be included in the calculation of an attorney's contingency fee.

This rule has been interpreted to provide courts with the discretion to award a higher rate of interest when such an award would be "fair and equitable." Interchange State Bank v. Rinaldi, 303 N.J. Super. 239, 261 (App. Div. 1997) (citing Mid-Jersey Nat'l Bank v. Fidelity Mortg. Invs., 518 F.2d 640 (3d Cir.

1975)).  "When the legal rate is less than the contract rate it may be equitable to allow interest to run on the judgment at the contract rate to avoid prejudice to a mortgagee caused by delays in satisfying the judgment."  Id. (quoting Shadow Lawn Sav. & Loan Ass'n v. Palmarozza, 190 N.J. Super. 314, 318 (App. Div. 1983)).

Defendants argue the court erred as a matter of law in its determination that lawful interest includes contract interest.  They maintain that, under the merger doctrine, "the mortgage contract is merged into the final judgment of foreclosure and the mortgage contract is extinguished . . . the mortgage contract interest rate is replaced by the post-judgment rate permitted under the rules of the court."  Realty Asset Prop. Ltd. v. Oldham, 356 N.J. Super. 16, 21 (App. Div. 2002) (internal citations omitted).  Defendants also rely on Shadow Lawn, in which we held "[a]fter entry of [a foreclosure] judgment, interest will run at the legal rate except as otherwise ordered by the court and except as may be otherwise provided by law" in support of their position.  190 N.J. Super. at 318.

Relying on Interchange, 303 N.J. Super. 239, defendants further argue that where a court determines to award post-judgment interest under Rule 4:42-11(a), at a rate different than the legal rate, "the court must consider and weigh the equities."  This includes that defendants are not over-secured; plaintiff requested

A-1979-23

the post-judgment interest rate be lawful interest, not contract interest; plaintiff did not immediately challenge the lawful interest rate award in the judgment; and there was no need for defendants to object to plaintiff's motion to enter the judgment on post-judgment interest rate grounds because plaintiff did not request contract rate post-judgment in its motion. Defendants assert the court's failure to weigh the equities constitutes an abuse of discretion.

In Interchange, we addressed whether to award post-judgment interest at the legal rate rather than the contract rate. 303 N.J. Super. at 260. We contemplated whether the legal rate of 5.5% should be applied rather than the contract rate of 11.25% which was awarded, Id. at 259-60, and found that "[a]ny over[-]secured judgment creditor . . . should, generally be awarded post-judgment interest at the contract rate." Id. at 239, 265. We remanded for the court to "determine whether it would be equitable to allow interest to run on the judgment at the contract rate to avoid prejudice to the judgment creditor caused by delays in satisfying the judgment," and "review the actions taken by each party in their respective attempts to obtain a timely satisfaction of the judgment or, if applicable, forestall such satisfaction." Id. at 266 (quoting R. Jennings Mfg. Co., Inc. v. N. Elec. Supply Co., Inc., 286 N.J. Super. 413, 418 (App. Div. 1995)).

15

We reject defendants' argument the court erred by allowing interest to run at the contract rate. Defendants previously stipulated to fifteen percent for post-judgment interest as memorialized in the arbitrator's Phase I and Phase II Awards. The undisputed record shows that the parties stipulated:

> The judgment is entered jointly and severally against [defendants] in the principal sum of $16,573,835.18 . . . plus pre-judgment interests commencing December 1, 2020[,] through January 5, 2022[,] in the amount of $2,762,141.11 plus post[-]award and post[-]judgment interest on the Principal Sum at a rate of [fifteen percent] per annum commencing on January 6, 2022[,] until payment.
>
> [Emphasis added.]

Based on this stipulation, the court correctly concluded the post-judgment per diem interest was a result of the arbitrator's decision as argued by the parties. Because defendants stipulated to the post-judgment per annum rate of fifteen percent, we are unpersuaded by their argument that the lower rate under Rule 4:42:11(a) of 2.25% should have been applied. We further conclude the parties are bound by their stipulations. Kurak v. A.P. Green Refractories Co., 298 N.J. Super. 304, 325 (App. Div. 1997) (stating "stipulations of fact are binding on the parties").

Furthermore, this issue is barred under the res judicata doctrine. "Res judicata prevents re[-]litigation of a controversy between the parties."

16

A-1979-23

Brookshire Equities, LLC v. Montaquiza, 346 N.J. Super. 310, 318 (App. Div. 2002). "The rationale underlying res judicata recognizes that fairness to the defendant and sound judicial administration require a definite end to litigation." Velasquez v. Franz, 123 N.J. 498, 505 (1991) (citing Restatement (Second) of Judgments § 19 cmt. a (Am. L. Inst. 1982)).

"[F]or res judicata to apply, there must be (1) a final judgment by a court of competent jurisdiction, (2) identity of issues, (3) identity of parties, and (4) identity of the cause of action." Brookshire Equities, 346 N.J. Super. at 318 (citing Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 172-73 (App. Div. 2000)). "[I]n appropriate circumstances[,] an arbitration award can have a res judicata . . . effect in subsequent litigation." Nogue v. Est. of Santiago, 224 N.J. Super. 383, 385-86 (App. Div. 1988). "The doctrine of collateral estoppel is a branch of the broader law of res judicata which bars re[-]litigation of any issue actually determined in a prior action generally between the same parties and their privies involving a different claim or cause of action." Selective Ins. Co., 327 N.J. Super. at 173 (quoting Figueroa v. Hartford Ins. Co., 241 N.J. Super. 578, 584 (App. Div. 1990)).

Here, there is no question that the confirmation of the arbitrator's final judgment by the federal district court constituted a final judgment by a court of

17

competent jurisdiction, the issues raised by defendants concerning the amount of post-judgment interest were addressed in that judgment, and the parties and cause of action are the same. Moreover, defendants had the opportunity to litigate the calculation and amount of the interest in the arbitration proceeding and they did not. Instead, they stipulated to post-judgment interest as memorialized in the arbitrator's Final Award. Thus, defendants are precluded from relitigating the amount of post-judgment interest under the doctrine of res judicata. Brookshire Equities, 346 N.J. Super. at 318.

Parties to an arbitration agreement cannot create an avenue of direct appeal of an arbitration award to the Appellate Division; the parties must seek initial review in the trial court. Hogoboom v. Hogoboom n/k/a Grimsley, 393 N.J. Super. 509, 515 (App. Div. 2007). Again, defendants did not challenge the arbitration award. Under these circumstances, we discern no abuse of discretion by the trial court's reliance on the parties' stipulation to the fifteen percent post-judgment interest made during arbitration and confirmed by the federal court. Flagg, 171 N.J. at 571.

### III.

Defendants next argue the Sheriff's sale should be set aside because the notices of sale listed two different amounts, both higher than the amount

defendants calculated. In relying on the dictionary definition of "approximate," defendants contend the amounts listed on the notices of sale dated August 31, 2023—$29,563,967.11—and December 14, 2023—$25,664,199.21—were not approximate to the actual amount of the judgment, which is $21,501,343.47. They contend that the vast difference in the judgment amounts as advertised by the Sheriff constitute "fraud, accident, [or] irregularity" such that the sale must be set aside. And, "[t]hese accidents, irregularities, improprieties and/or mistakes may have negatively affected prospective bidders and resulted in a sale for less than the premises' highest and best price as of that date."

Plaintiff maintains the Sheriff's notices of sale included the "approximate" amount of the judgment. They assert the final judgment for purposes of the notice of sale was "the aggregate sum of $21,501,343.47 as of April 5, 2023, together with lawful interest thereafter on all sums due, together with costs to be taxed, including lawful counsel fees," and the Sheriff's notice for the December 14, 2023 sale listed the judgment amount as $25,664,194.21, which is legitimately "approximate" to the Final Judgment as stated above.

N.J.S.A. 2A:17-34 provides in pertinent part "[a]ll advertisements for the sale of real estate by virtue of executions issued out of any court of this state shall state the approximate amount of the judgment or order sought to be

19

satisfied by the sale."  In <u>Orange Land Co. v. Bender</u>, 96 N.J. Super. 158, 164 (App. Div. 1967), we set aside a Sheriff's sale where the mortgagor did not receive mandatory notice of the sale and had no knowledge of the sale for five months.  And, in <u>Assoulin v. Sugarman</u>, 159 N.J. Super 393, 397 (App. Div. 1978), we affirmed a court's order setting aside a Sheriff's sale for failure to comply with <u>Rule</u> 4:65-2, requiring the defendant to send the plaintiff a ten-day notice of the Sheriff's sale.  We noted that despite the court's broad discretion to employ equitable remedies, the power to set aside a Sheriff's sale should be "sparingly exercised."  <u>First Tr. Nat. Ass'n</u>, 319 N.J. Super. at 52.

Here, the trial court declined to set aside the Sheriff's sale, based on a six percent difference in the amounts listed in the Sheriff's August and December 2023, notices of sale.  The court remained unconvinced that defendants had established a basis to set aside the sale, finding "[t]here [was] no fraud.  There [was] no mistake or surprise.  And . . . the 'irregularity' [was] de minimis."  The court acknowledged the sole instance of "irregularity" is the inconsistent posting of the judgment amount first at "[twenty-nine] million [dollars] and change, then [twenty-five] million [dollars] and change.  And by the defendant's meticulous calculation, the correct amount is closer to [twenty-one] million [dollars] and change," but concluded that "[q]uite frankly, when you are talking about

numbers of this magnitude[,] and you compare the difference in the two prices posted by the sheriff. The difference is well under [ten] percent, and it's actually under [six] percent."

The court, however, did not support this part of its decision with any calculations. We are not convinced that the six percent difference noted is accurate, and there is no explanation why the court compared the amounts listed in the August and December Sheriff's notices of sale, rather than focusing on the difference between the judgment of foreclosure and the advertised amount.

N.J.S.A. 2A:17-34 requires the Sheriff's advertisements for the sale of property to state the approximate amount of the judgment or order sought to be satisfied by the sale. Here, the foreclosure judgment was in the amount of $21,501,343.47 plus post-judgment interest, and the amount advertised in the December 14, 2023[5] notice of sale was $25,664,194.21, exclusive of judgment interest and sheriff's fees. We note the difference in the advertised amount and the amount of the judgment varies by at least $4,162,850.74, not including post-judgment interest. Defendants, however, present no proof in support of their argument that the difference of $4,162,850.74, or approximately nineteen percent, warrants vacatur of the sale. Moreover, as the court noted, defendants

---

[5] We discern this is the relevant date because it is when the sale occurred.

A-1979-23

fail to support their argument that there were other bidders for the property who were dissuaded from bidding due to the advertised price.

Under these circumstances, while the trial court's calculation of a six percent difference was incorrect, it unequivocally made clear that its denial of defendants' motion was based primarily on its finding that the post-judgment interest amount in the Sheriff's notice of sale was the fifteen percent, as set forth in the parties' stipulations and the arbitrator's decision. Additionally, the property sold for $100, suggesting that plaintiff was the sole bidder. Thus, we agree with the court's finding that any irregularity in the conduct of the sale is de minimis and insufficient to warrant reversal because it did not produce an unjust result. R. 2:10-2.

IV.

Lastly, defendants aver the trial court abused its discretion in conditioning a stay on the posting of a supersedeas bond by defendants in one-business day. Defendants, however, fail to offer any support for this argument. Moreover, the record shows that while the court initially ordered the bond to be posted within one-business day in its March 1, 2024 order, it issued a separate order on the same day giving defendants sixty days to post the supersedeas bond. Thus, the

22

trial court's determination was not manifestly unreasonable, as defendants argue.

Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1979-23