ELEVENTH WARD BUILDING AND LOAN ASSOCIATION, complainant-respondent,

*v.*

CARLO CAMPAGNA, MRS. CARLO CAMPAGNA, wife of Carlo Campagna, ENRICO BENACQUISTA, CHANNEL LUMBER COMPANY of Belleville, New Jersey, H. B. SALMON COMPANY and BELLEVILLE SASH AND DOOR CORPORATION, defendants-appellants.

[Submitted October term, 1930. Decided April 24th, 1931.]

*Mr. Scott German,* for the complainant-respondent.

*Mr. Harry Phillipson* and *Mr. Milton J. Finkelstein,* for the defendants-appellants Belleville Sash & Door Corporation and H. B. Salmon Company.

  *Mr. Milton J. Finkelstein,* for the defendant-appellant, Channel Lumber Company of Belleville.

  The opinion of the court was delivered by

CASE, J.

  This is a contest for priority of lien on real estate between a mortgagee on the one hand and certain materialmen on the other. Raffaele Benacquista and Enrico Benacquista were cousins known to the trade as Benacquista Brothers. They had previously done business as partners under the name of Benacquista Brothers and as such, and in that name, had purchased materials from all the materialmen. On July 17th, 1928, they took title jointly to a parcel of real estate that includes the land in question. Raffaele later conveyed his undivided one-half interest to Enrico. Still later each entered into a contract with the other, Enrico as owner and Raffaele as builder, for the erection of two dwelling houses, one of which, No. 163 North Fifteenth street, Bloomfield, is the subject-matter of this litigation. The contract and the specifications were regularly filed. On February 7th, 1929, after the building operations had begun, complainant's mortgage, executed by Enrico Benacquista and wife, in the amount of $11,500 was recorded. The advancement of the money thereunder began on February 21st, 1929, and continued from time to time until June 14th, 1929. Practically the full amount of the mortgage was paid either to Enrico Benacquista or to his use, but the proofs do not indicate the application of these moneys to the erection of the building except to the extent of $4,064.25, which was paid to Enrico and by him to Raffaele and may be assumed, under the circumstances, to have been a payment on the contract. There was a default under the mortgage, and the mortgagee filed its bill of foreclosure, making parties defendant the two Benacquistas, Carlo Campagna (to whom meanwhile the fee had been conveyed) and wife, and the present appellants, Channel Lumber Company of Belleville, New Jersey, H. B. Salmon Company and

Belleville Sash & Door Corporation, materialmen who had filed liens and prosecuted the same to judgment in the Essex county circuit court against the Benacquistas and Campagna. The court of chancery adjudged that the mortgage was the superior lien and that the property should be sold and the proceeds applied first to the payment of the mortgage with interest and costs.

The underlying purpose of Mechanics' Lien acts is to encourage master builders, mechanics and materialmen to undertake building operations. Various checks and balances are incorporated in the statutes to procure this result without undue hardship on other interests. Under our Mechanics' Lien law (*3 Comp. Stat. p. 3291*) the owner may, by entering into a contract with his builder, filing the contract and the specifications, and proceeding thereunder, escape the lien as to all save the contractor alone. The owner, however, does not enter the instant case; he and his successor in ownership of the fee are shut out by the circuit court judgment. A mortgagee whose funds have not been fully advanced may also find protection in various ways, notably under section 15 of the act, by seeing to it that the mortgage is recorded before a lien is filed and that the moneys when actually advanced are applied to the erection of the building. The complainant herein did not, except to the limited extent above mentioned, avail itself of such protective measures. It now seeks to avoid the weakness of its own position by making an assault on the position of the materialmen as lien claimants. Section 2 of the act is revoked, and our attention is directed to the language thereof, which is in part as follows: "Whenever any building shall be erected in whole or in part by contract in writing, such building and the land whereon it stands shall be liable to the contractor alone for work done or materials furnished in pursuance of such contract * *." Complainant insists that thereby the appellants are deprived of their liens.

The proofs are that the materials scheduled in the claims went into the structure. There is evidence not only that the sale of, and the extension of credit for, these materials to

both of the Benacquistas was a *bona fide* continuation of the identical relations theretofore existing, but that the Benacquistas specifically directed that this course be pursued. Vice-Chancellor Stevenson, in his learned dissertation on the origin and development of the Mechanics' Lien law, in *McNab & Harlin Manufacturing Co.* v. *Paterson Building Co., 71 N. J. Eq. 133* (at *p. 139*), says: "The first lien, the elemental mechanics' lien, is little more than an extension of the common law lien afforded to large numbers of purveyors of labor and materials who add value to chattels under contract with the owner thereof." So, here, we have an elemental form of lien, namely, for materials which, under the direction of the owner, were placed in, and added value to, his property. Neither Benacquista nor Campagna appeared in the pending suit, nor did they defend in the circuit court proceedings on the liens. It is clear, we think, that there was such a variation from the terms of the contract between the Benacquistas that the materials cannot be said to have been furnished in pursuance thereof (*Mechanics Mutual Loan Association* v. *Albertson, 23 N. J. Eq. 318*), a conclusion which is accentuated by the fact that neither the owner nor the contractor seek the protection of the statute and the mortgagee has not pursued the course set up by the statute in its behalf.

Our conclusion is that the decree should be so modified as to adjudge the complainant's mortgage to be a first lien to the extent of $4,064.25, plus interest thereon and costs; that next in order of priority shall be the lien claims of the appellants, the same to share *pro rata* if the available funds be insufficient to meet the claims in full; and that the unpaid balance of complainant's decree shall rank next.

The record will be remitted to the end that the decree be modified to conform to our findings.

*For affirmance*—LLOYD, DONGES, KAYS, JJ. 3.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, CASE, BODINE, DALY, VAN BUSKIRK, DEAR, JJ. 9.