202 N.J. Super. 303 (1985)
494 A.2d 1043
NATIONAL COMMUNITY BANK OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SENECA-GRANDE, LTD., ET AL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1985.
Decided June 26, 1985.
*305 Before Judges McELROY and DREIER.
Henry Rubin argued the cause for appellant (Rubin & Brady, attorneys; Henry Rubin, on the brief).
Burton T. Cohen argued the cause for respondent (Okin, Pressler, Cohen & Hollander, attorneys; Burton T. Cohen, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant Allied Concrete Co. Inc. (Allied) has appealed from a summary judgment granted by Judge Stanton in the Chancery Division in favor of plaintiff in this foreclosure action. Plaintiff moved for summary judgment and defendant Allied filed a cross motion for dismissal of plaintiff's complaint and for a hearing to determine priorities. Judge Stanton reserved decision and held a plenary hearing on March 5, 1984. Prior to that hearing a related Law Division action involving the same issues of priorities was consolidated with the foreclosure matter for joint trial. Judge Stanton explained at the plenary hearing that summary judgment had been withheld since there were facts that had to be explored before a decision could be rendered. *306 He informed the parties that the priority determination, often withheld until a surplus money proceeding, would be made at that hearing. The parties were clearly told "this is the only bite you're going to get of the apple."
The mortgagor, Seneca-Grande, Ltd., was in the process of constructing a large catering and restaurant facility in 1979, having raised approximately $1,400,000 through investments in the limited partnership before work was commenced. Allied was the contractor that poured concrete for the foundation and basement. It, along with other contractors, secured its claims for construction charges by mortgages. Allied's mortgage, securing a debt of $67,573.71, was recorded January 21, 1981. The mortgage contained the following automatic subordination clause:
This mortgage shall be subject to and subordinate to a mortgage hereinafter executed by Mortgagor, or their successors in interest, to secure a loan in such amounts as are granted by a bona fide institutional lender for construction of the improvements upon the premises and to finance same on a permanent basis, which mortgage or mortgages, when duly recorded, shall constitute a lien and charge on said lands prior and superior to the lien and charge of this mortgage. The Mortgagee shall, if required by the lending institution, execute such documents as may be necessary within five days of request to do so, to further indicate the subordinate character of this mortgage; it being the intention of the parties thereto that this mortgage shall be automatically subordinate to any bona fide institutional mortgage without necessity of execution of any further documents....
A number of other unpaid contractors also secured their claims with mortgages. Structural Systems Inc., the steel supplier, recorded its mortgage prior to Allied's on June 1, 1980 and other contractors, Benfatto Construction Corp., Alumagene Construction Co. and H. Friedman & Sons, Inc., among others, recorded their mortgages after the Allied mortgage on January 26, 1981, July 7, 1981 and November 25, 1981, respectively.
On October 31, 1980 plaintiff issued its commitment letter to Seneca-Grande, Ltd. for a "Construction and Permanent Mortgage Loan" in the amount of $1,600,000 to be secured by a first lien on the premises as well as guarantees and other collateral. The commitment contemplated a nine month construction loan *307 and a five year permanent loan. The mortgage closed January 9, 1981, with the construction mortgage recorded July 10, 1981. As is usual in such circumstances, the closing occurred at the time of the initial advance. This advance of $700,000 was not only disbursed to more than 50 unpaid contractors, laborers, materialmen, and municipal authorities but used as well to defray other expenses directly related to the construction, such as insurance, fees for legal services, interest charges and the like. The owner's affidavit submitted to the bank in connection with this advance provided specifically:
5. The proceeds of this advance will be used to:
(a) Pay the above firms the amounts shown for services, labor, material, transport furnished and/or legal fees for said Owner.
(b) However, the owner herein shall be paid directly from the mortgage proceeds the sum of $45,000.00 which sum shall be used solely for the payment of interest on the aforesaid mortgage and $3,000.00 for the Night Watchman.
(c) All of the above payments shall be paid in accordance with the above list directly to those entities for work performed and material delivered.
6. All sums borrowed from Peoples National Bank of North Jersey [a distributee shown on the certification as receiving $61,873.15] were paid to laborers, materialmen and/or suppliers.
The affidavit expressly stated that it had been made to induce plaintiff to advance the proceeds under the provisions of N.J.S.A. 2A:44-89. Each of the subsequent advances was supported by a similar owner's affidavit.
The priority of a construction mortgage over mechanics liens is established by N.J.S.A. 2A:44-89 which accords priority, within various limitations, for advances made to pay the purchase price; prior liens, including tax or municipal liens; premiums, counsel fees, financing charges and costs (not to exceed 5% of the principal) for the mortgage; properly filed mechanics liens (which must be paid proportionately if all are not paid); and, finally, claims of non-lien claimants
named by ... the mortgagor in a written statement, duly sworn to ... as the persons who have supplied material or furnished labor actually used in the erection, construction, completion, addition to, alteration or repair of any building upon the mortgaged premises to whom money is due for such labor or materials ...; provided, however, that the mortgaged funds or any part thereof advanced or paid by the mortgagee under this subsection shall be applied first *308 to payment in full or payment proportionately of the monies due to the persons listed in such written statement. [N.J.S.A. 2A:44-89f].
Allied is not asserting its right to be paid as a supplier of labor and materials, but as a prior mortgagee. In fact, as was noted in Riverside Apartment Corp. v. Capitol Const. Co., 107 N.J. Eq. 405, 412 (Chan. 1930), aff'd o.b. 110 N.J. Eq. 67 (E. & A. 1931), by the acceptance of a mortgage, Allied waived its rights to assert a lien claim under N.J.S.A. 2A:44-89. We note further that the abandonment of the lien claim does "not affect in any respect, the rights of [the claimant] under its mortgage." Riverside at 412. By the taking of the mortgage, however, Allied did not itself become a construction mortgagee. "One materialman cannot secure priority over others, after the commencement of the building, by taking a mortgage." Id. at 413; see also Meister v. J. Meister Inc., 103 N.J. Eq. 78, 84 (Chan. 1928).
We thus must treat Allied solely as a mortgagee, irrespective of its prior status as an unpaid contractor entitled to certain priorities under N.J.S.A. 2A:44-89. As a result, Allied is not entitled to complain if the charges to the bank exceeded 5% of the principal, if insurance premiums were advanced (although not set forth in the exception provisions) or if it received other than proportionate payment as called for by the statute. Our sole task is to examine the mortgage document to determine whether Allied's prior recorded mortgage is subordinate to plaintiff's advances.
Allied contends that it did not intend by subordinating to lose its anticipated priority over the other contractors/mortgagees which had recorded after it or over the other laborers, materialmen or contractors who had neither lien claims nor mortgages. We note, however, that Allied's subordination was granted to a mortgage of "a bona fide institutional lender for construction of the improvements upon the premises and to finance the same on a permanent basis," and further provided that Allied's mortgage "shall be automatically subordinate to *309 any bona fide institutional mortgage without necessity of execution of any further document." Allied must be deemed to have known that any subsequent construction mortgagee would make payments permitted by N.J.S.A. 2A:44-89 in order to facilitate the continued construction of the building.
A similar situation was presented in Albert & Kernahan, Inc. v. Franklin Arms, Inc., 104 N.J. Eq. 446 (E. & A. 1929). There the trustee advanced monies to defendant "to the extent of $44,700 to be used in the payment of monies due and to become due to contractors" engaged in the construction of the apartment house. Id. at 448 (emphasis added). The court found that the priority of the trustee's lien over that of the subordinating claimant for work already performed or later performed "was entirely justified under the proofs." Id. at 449.
There is no question that the proceeds of the construction mortgage must be advanced for the construction of the premises in question and not for some unrelated project. Cambridge Acceptance Corp. v. Hockstein, 102 N.J. Super. 435, 439 (App.Div.), certif. den. 53 N.J. 81 (1968); Albert & Kernahan, Inc., supra. Judge Stanton expressly noted that there could be no diversion of funds away from the project within the meaning of any of the rules or policies established in Cambridge Acceptance Corp.
The court in Cambridge Acceptance Corp. also stated:
While, under general principles of mortgage subordination law outlined above, a construction lender taking the benefit of a subordination is not a guarantor to the subordinator or liable to him for mere negligence in seeing to the appropriation of the moneys to the construction, we think plain principles of equity at least call for such a construction lender to make and administer the loan in the conventional manner of a construction lender rather than mask what is essentially a loan on the general credit and reliability of the borrower and the security of the land value as a construction loan, and act accordingly in disbursing the funds.
Allied's argument that the loan in question was not a true construction loan, but rather a general business loan to Seneca-Grande Ltd. is unavailing. The testimony, supported by the *310 loan documentation admitted into evidence, clearly supports Judge Stanton's finding that "the mortgage loan truly was a construction mortgage loan" (emphasis in original).
On the basis of the evidence before him Judge Stanton properly found that "there was no negligence on the part of plaintiff in supervising disbursements of mortgaged funds. There was no showing of collusion between the plaintiff and the mortgagor[1]."
Allied also seeks to advance its claim by applying the principles established in B.J.I. Corp. v. Larry W. Corp., 183 N.J. Super. 310, 321-324 (Ch.Div. 1982). That case involved a blanket subordination which ordinarily would have imposed no requirement that the proceeds of the loan which was granted priority be applied to construction of the premises in question. Where, however, there is a general subordination clause in a consumer-type contract that has not
been bargained for and understood, the clause will be presumed to be `specific,' i.e., to require implicitly that the loan proceeds be allocated to direct or indirect improvements upon the particular property burdened by the mortgage. [Id. at 324].
This case, although stating valid law, is inapposite; plaintiff's transaction here was a commercial rather than consumer-type arrangement, and the subordination clause was specific as opposed to general. However, the underlying premise recognized in B.J.I. Corp. still applies to this case since priority will be accorded to a construction mortgage where the various charges shown on the disbursing statements all relate directly to the structure under construction. This was demonstrated by the testimony and exhibits before Judge Stanton.
Allied lastly argues that the inequity of its loss of priority with the resultant failure to be paid for the substantial work it *311 performed, even with its claim secured by a recorded mortgage, should have caused the trial judge to have protected its position. It urges that the equities in its favor are compounded in light of the bank's buying in at the foreclosure sale for the sum of $300. Allied further has moved before us to supplement the record to show that the bank has contracted to sell the premises for a sum millions of dollars in excess of the $1,600,000 the bank advanced. It matters little whether the record is supplemented or not, since we have assumed from the initial equity in the building that the fair market value of the premises was greatly in excess of the amount originally advanced by the bank.
The fault here, however, does not lie with the bank. It was not obligated to seek bidders at the sheriff's sale since, holding a first lien, it knew that if there were no bidders it could make a nominal bid (as it did) or bid against any competing bidder to the full amount of its claim, knowing that it would be paid in full without having to advance more than sheriff's fees even if it were not outbid. It was the province of Allied, Seneca-Grande Ltd., or any other interested party to attract additional bidders to the sale who would be committed to bidding in excess of the amount owed to the bank so that junior lienors or the owner could be paid. If bidders could not be attracted to the original sale, applications could have been made for adjournments. If the property required some special marketing, the court could have been petitioned for an order to that effect. None of this occurred, however. The property was struck for a nominal price and plaintiff apparently will make a substantial profit on the transaction. Be this as it may, Allied's quarrel should be with the sale and the lack of substantial competitive bidding, not with Judge Stanton's very proper priority determinations.
Affirmed.
NOTES
[1] As to the lack of responsibility on the part of the bank generally to supervise the distribution of its mortgaged proceeds delivered to an owner, see First National State Bank, N.J. v. Carlyle House Inc., 102 N.J. Super. 300, 321-323 (Ch.Div. 1968), aff'd o.b. 107 N.J. Super. 389 (App.Div. 1969).