845 A.2d 159

SOVEREIGN BANK, PLAINTIFF–RESPONDENT, v. SILVERLINE
HOLDINGS CORP., BANK OF INDIA, COUNTY ARCHITEC-
TURAL METAL & GLASS, INC., DEFENDANTS, AND DEL-
LANNO CONSTRUCTION, INC., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 24, 2004—Decided March 23, 2004.

Before Judges STERN, A.A. RODRÍGUEZ and PAYNE.

*Alan Winkler* argued the cause for appellant (*Peckar & Abram-
son,* attorneys; *Mr. Winkler,* on the brief).

*Meridith F.M. Mason* argued the cause for respondent (*Hill Wallack,* attorneys; *Ms. Mason and Mark A. Roney,* on the brief).

The opinion of the court was delivered by

PAYNE, J.A.D.

Defendant Dellanno Construction, Inc., a construction lien holder, appeals from an order of summary judgment in favor of plaintiff Sovereign Bank that had the effect of determining that Sovereign's first-filed mortgages had priority over liens recorded thereafter by construction lien holders. At issue is the proper construction of the priority provisions of New Jersey's Construction Lien Law, *N.J.S.A.* 2A:44A–1 to –38.

We summarize the facts of this matter as follows: Defendant Silverline Holdings Corp. was the developer of property located in Piscataway, New Jersey. On February 2, 2000, Silverline, Sovereign and Ravi Subramanian entered into a mortgage and construction loan agreement, whereby Sovereign agreed to loan Silverline up to six million dollars in return for a promissory note, secured by a mortgage on the property where construction was to occur. The mortgage was recorded on February 4, 2000. On January 8, 2001, Sovereign loaned Silverline an additional $750,000 as a business loan in return for a promissory note, again secured by a mortgage, recorded on March 5, 2001. Thereafter, on October 26, 2001, a construction lien claim on the property in the amount of $234,892 was recorded by Dellanno.

Upon default on the loans from Sovereign by Silverline, on May 21, 2002, Sovereign commenced a foreclosure action against Silverline, naming Dellanno as a defendant as the result of its lien. It then moved for a determination that its mortgages had priority over Dellanno's lien. Dellanno took the position in opposition to the motion that, even if Silverline's construction mortgage were first recorded, Sovereign still had to demonstrate that the funds secured by the mortgage had been utilized for a statutorily specified purpose in order for it to maintain its priority position.

If the funds were misused, Dellanno argued, then the construction lienor assumed priority. Thus, an evidentiary hearing on the use of the funds loaned by Silverline was required.[1] The motion judge disagreed, and he granted Sovereign's summary judgment motion.

On appeal, Dellanno reasserts the arguments that it raised in opposition to summary judgment, arguing that if a first-recorded mortgage is automatically accorded priority, then no financial security exists for those contractors and subcontractors involved in the construction of the improvements to property subject to a mortgage that secures a construction loan. Upon foreclosure, the construction mortgagee will usually obtain the property and its improvements, whereas the contractors and subcontractors will remain unpaid. This issue has not been addressed under existing law.

In 1993, New Jersey enacted the present Construction Lien Law as a replacement for its prior Mechanics' Lien Law. The present Lien Law recognizes the validity of construction liens, *N.J.S.A.* 2A:44A-3, with the exception of certain enumerated prohibited liens set forth in *N.J.S.A.* 2A:44A-5. It provides the form for a claim, *N.J.S.A.* 2A:44A-8, the requirements for the filing of a lien claim, *N.J.S.A.* 2A:44A-6, and the manner of service of such claims. *N.J.S.A.* 2A:44A-7. In addition to the foregoing, *N.J.S.A.* 2A:44A-20 provides for the filing of a notice of unpaid balance (NUB) or potential construction lien claim to provide notice to persons claiming title to or an estate or interest in or a lien upon real property of the anticipated filing of a lien claim, as well as an anticipatory priority.

Of relevance here, *N.J.S.A.* 2A:44A-10 provides:

> Subject to the limitations of section 6 of this act [regarding recordation], the lien claim shall attach to the interest of the owner from and after the time of filing of the lien claim. Except as provided by section 20 of this act [governing NUBs], no lien claim shall attach to the estate or interest acquired by a bona fide purchaser first recorded or lodged for record; *nor shall a lien claim enjoy priority over any*

---

[1] Dellanno has no present information that suggests misuse.

*mortgage, judgment or other lien first recorded, lodged for record, filed or docketed.* (Emphasis supplied.)

An additional priority provision, upon which Dellanno relies, appears in *N.J.S.A.* 2A:44A–22, which provides in relevant part that "[e]very mortgage" shall have priority over any lien that may be established under the Construction Lien Law "to the extent that the mortgage secures funds which have been applied" to various enumerated purposes, including the payment of (a) recorded lien claims and amounts due under NUBs, (b) the purchase price of the land covered by the mortgage, (c) liens or encumbrances recorded before recordation of a lien authorized by the Construction Lien Law, (d) taxes, assessments, and State or municipal liens or charges, (e) certain costs related to financing, (f) reimbursement to the landowner for amounts paid toward the purchase price of the real property, and (g) an escrow to secure payment of charges described in (a), (c), (d), and (e).

Dellanno construes *N.J.S.A.* 2A:44A–22 to apply to all construction mortgages, whether recorded prior or subsequent to a construction lien, and utilizes this provision as a basis for its argument that a hearing as to the use of Sovereign's funds was improperly denied when the court granted summary judgment to Sovereign in this case. In essence, Dellanno's construction of *N.J.S.A.* 2A:44A–22 requires the insertion of the word "only" into the sentence: "Every mortgage shall have priority ... over any lien which may be established by virtue of this act [only] to the extent that the mortgage secures funds which have been applied" to specified purposes.

In support of its position, Dellanno relies upon prior versions of the Mechanics' Lien Law and decisions construing those enactments. Dellanno relies first upon Section 15 of the New Jersey's Mechanics' Lien Law, enacted in 1898. *See* Mechanics' Lien Law, *L.* 1898, *c.* 226 § 15, and decisions under that section of the law. In particular, it relies on *Aggressive Building & Loan Assoc. v. Kearny Supply Co.,* 110 *N.J. Eq.* 426, 160 *A.* 565 (E. & A.1932); *Eleventh Ward Building & Loan Ass'n v. Campagna,* 108 *N.J. Eq.* 202, 154 *A.* 414 (E. & A.1931), *Feinberg v. Building Construc-*

*tion Co.*, 107 *N.J.L.* 495, 154 *A.* 821 (E. & A.1931) and *Lumber-men's Ins. Co. v. Russo*, 108 *N.J. Eq.* 407, 155 *A.* 388 (Ch.1931).

In each of the four cases cited by Dellanno, a previously recorded advance money mortgage was accorded priority over later filed materialmen's liens pursuant to Section 15 only to the extent that the advance money mortgage was utilized for construction purposes. Otherwise, the materialmen's lien had priority— the result that Dellanno espouses here. However, the statutory scheme was different then. At the time of the events underlying the decisions upon which Dellanno relies, Section 14 of the Mechanics' Lien Law gave priority to liens for labor performed or materials furnished for the erection and construction of a building over previously filed advance money mortgages to the extent that money remained to be advanced under the construction loan at the time that the lien was filed. However, the priority accorded to materialmen's liens was lost under Section 15, if the mortgage had been recorded first, to the extent that the money secured by the mortgage was "actually advanced and paid by the mortgagee and applied to the erection of any new building . . . alterations, repairs or additions . . . ."

Significantly, in 1930, Section 14 of the Mechanics' Lien Law was repealed. *See L.* 1930, *c.* 212, § 7. Additionally, Section 15 of that law was amended to accord priority to mortgages if at the time of recordation the building covered by the mortgage had been substantially completed and no liens had been filed, no building and no construction activity evidencing an intent to build existed, or construction had been abandoned for a period of four months or more. *L.* 1930, *c.* 212, § 8(b). Additionally, in a provision similar to the present *N.J.S.A.* 2A:44A–22, mortgages were accorded priority, regardless of the date of recordation, to the extent that loan proceeds were utilized for specified purposes associated with construction and development purposes. *L.* 1930, *c.* 212, § 8(a).

Thus, contrary to Dellanno's arguments, under the 1930 amendments, second-filed mechanics' liens lost the limited priority that

they had previously enjoyed over first-filed mortgages that were not used for specified construction-related purposes.[2]

The provisions of Section 15 of the 1930 statute were amended in 1948 by *L.* 1948 *c.* 242, § 1, and codified as *N.J.S.A.* 2A:44–87, – 88 and –89. *N.J.S.A.* 2A:44–87 provided the priority of a mortgage over any lien established under the article to the extent stated in sections 2A:44–88 or –89. *N.J.S.A.* 2A:44–88 contained the provisions according priority to mortgages on land on which a building had been substantially completed and no liens had been filed, no buildings or an intent to build appeared, and on which construction had been abandoned for at least four months. *N.J.S.A.* 2A:44–89 continued the priority accorded to mortgages, regardless when filed, whose proceeds had been utilized for specified construction-related purposes.

In September 1982, a Mechanics' Lien Law Study Commission appointed a year earlier by Governor Brendan T. Byrne issued a Report entitled "Report and Legislative Recommendations of the Mechanics" Lien Law Study Commission" (September 1982 Report to the Governor of the State of New Jersey) that sought to "achieve a more equitable balancing of the respective interests of land, labor and capital." *Id.* at 1. *See Legge Ind. v. Kushner Hebrew Acad.,* 333 *N.J.Super.* 537, 564–66, 756 *A.*2d 608 (App.Div. 2000) (reproducing in an appendix the Objectives of the Commission's Legislative Recommendations). Among the Objectives of that Commission were:

----

[2] *National Community Bank of N.J. v. Seneca–Grande, Ltd.,* 202 *N.J.Super.* 303, 494 *A.*2d 1043 (App.Div.1985), a case decided under the 1949 version of the Mechanics' Lien Law, upon which Dellanno relies, does not hold otherwise. In *Seneca–Grande,* a contractor secured its claims for construction charges with a mortgage, which contained a clause subordinating the mortgage to a later-filed mortgage to secure a commercial construction loan. Upon default, the contractor asserted priority as a prior mortgagee. When finding the contractor to hold a subordinate position, we observed that it would have been entitled to certain priorities if it had simply recorded a mechanics' lien. *Id.* at 308, 494 *A.*2d 1043. However, those priorities would have existed because it filed its lien first, and only if the construction loan proceeds secured by a subsequently-filed mortgage had been misused.

2. to continue to provide an extraordinary remedy to those who supply work and materials (e.g., contractors, subcontractors, suppliers, workmen) in the improvement of real property, which remedies are in addition to and not intended to detract from the rights and remedies otherwise available to these and other parties pursuant to contract and common law; [and]

\* \* \*

8. to recognize and clearly designate the priority of mortgagees as to construction advances made in the course of a project so as to encourage the flow of construction monies into the growth of New Jersey businesses and development of real property.

Nonetheless, the language found previously in *N.J.S.A.* 2A:44–89 does not appear in the Commission's proposed Construction Lien Act, included as an appendix to its Report. The only priority provisions relating mortgages appear in sections twenty-three and twenty-four. Section twenty-three provided that the conveyor of an interest in land remains liable for any liens filed within ninety days after the conveyance, thereby rendering the conveyor liable for liens resulting from work done prior to the conveyance, since a ninety-day period is given for the filing of a lien. Section twenty-four stated: "Any person acquiring an interest in real property subject to the provisions of this act, shall acquire the interest therein free and clear of any construction lien claim filed pursuant to the provisions of this act, if the interest acquired is recorded prior to the recording of the lien claim." In a paragraph of the report explaining these two proposed provisions, it was stated in relevant part:

A purchaser, lessee or mortgagee's interest is thus superior to any lien filed after the purchaser, lessee or mortgagee acquires an interest. The purpose of these sections is to eliminate any chilling effect the statute may otherwise have had on the free transferring, leasing and mortgaging of property . . .
[Report, *supra*, at 37.]

A legislative response to the Commission's Report was delayed until 1993 when the present Construction Lien Law (which differs considerably from that proposed in 1982) was enacted, and the prior Mechanics' Lien Law was repealed. At that time, the Legislature deleted from the law provisions formerly contained in *N.J.S.A.* 2A:44–88 governing priority as affected by the status or existence of a building at the time of the recordation. It retained

in substantially similar form the provisions formerly contained in *N.J.S.A.* 2A:44–89 governing priority as affected by the application of funds or advances to specified purposes. However, it inserted into the law for the first time the mortgage priority language that we have previously noted, found in *N.J.S.A.* 2A:44A–10, which provides that, with the exception of NUBs, no lien claim "shall . . . enjoy priority over any mortgage, judgment or other lien first recorded, lodged for record, filed or docketed." To this extent, the present law resembles the 1982 proposal.

Dellanno acknowledges *N.J.S.A.* 2A:44A–10, as it must. However, it argues that in light of prior case law, the interaction between *N.J.S.A.* 2A:44A–10 and –22 creates an ambiguity that must be resolved in a fashion that protects the holder of a construction lien by assuring that construction loan proceeds have been properly applied. We cannot accept that position. As we read the Construction Lien Law, it is clear in its terms. *Frugis v. Bracigliano,* 177 *N.J.* 250, 280, 827 *A.*2d 1040 (2003); *Cornblatt, P.A. v. Barow,* 153 *N.J.* 218, 231, 708 *A.*2d 401 (1998). *N.J.S.A.* 2A:44A–10 provides priority to all first-filed mortgages over subsequently filed construction liens unless a NUB has been filed pursuant to *N.J.S.A.* 2A:44A–20. Even if a NUB is first-filed, the mortgagee is accorded priority to the extent that loan funds are utilized for the purposes set forth in *N.J.S.A.* 2A:44A–22. It is only when the construction loan proceeds are misused that the holder of a NUB or a holder of a first-filed construction lien would retain its priority.

In the present case, Dellanno unquestionably recorded its lien after Sovereign had recorded its mortgages, and it filed no NUB. As a consequence, *N.J.S.A.* 2A:44A–10 controls, giving Sovereign automatic priority. The provisions of *N.J.S.A.* 2A:44A–22 never come into play. If this were not the case, as Sovereign argues, *N.J.S.A.* 2A:44A–10, according priority to first-filed mortgages would be robbed of its meaning, as would *N.J.S.A.* 2A:44A–20, governing the priority of NUBs.

Affirmed.