**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0566-23

ABE COHEN,

    Plaintiff-Appellant,

v.

WORKSHOP/APD
ARCHITECTURE, D.P.C.,

    Defendant-Respondent.

_____

        Argued April 16, 2024 – Decided July 24, 2024

        Before Judges Gooden Brown and Puglisi.

        On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3464-22.

        Anthony Sango argued the cause for appellant (Ansell Grimm & Aaron, PC, attorneys; Anthony Sango and Anthony J. D'Artiglio, on the briefs).

        Alexander C. Banzhaf (Tuttle Yick, LLC) argued the cause for respondent (Alexander C. Banzhaf, attorney; Alexander C. Banzhaf, on the brief).

PER CURIAM

Plaintiff Abe Cohen appeals from the September 11, 2023, Law Division order granting defendant Workshop/APD Architecture, D.P.C.'s motion to compel arbitration, and dismissing without prejudice plaintiff's complaint and defendant's counterclaim.  We affirm.

I.

We glean these facts from the motion record.  In October 2018, plaintiff hired defendant, a New York architectural firm "specializing in luxury homes, high-end commercial development, and hospitality design," to perform professional services in connection with the construction of his multi-million-dollar home in Long Branch, New Jersey.  Pursuant to the fourteen-page contract entered into and executed by both parties on October 22, 2018, defendant "would be involved in the architectural design, on-site construction supervision, and interior design and decoration . . . from design through construction and installation."

The contract was comprised of eight phases with the first seven phases to be invoiced based on a percentage of estimated construction costs, and the eighth phase to be performed on an hourly basis.  Two addenda followed the signature page.  Addendum two, labelled "Terms and Conditions," included a section titled "Disputes," which provided in small font:

> (18) DISPUTES [I]n the event of any dispute arising
> out of the services in this [a]greement, the parties agree

A-0566-23

to arbitration, before one . . . arbitrator in the [c]ounty, [c]ity, and State of New York, to resolve the dispute. This [a]greement shall be governed by the laws of New York. To the extent the dispute involves a payment dispute, the prevailing party shall be entitled to recover all associated costs, expenses, and fees, including attorneys' fees from the other party. The arbitration procedure shall be as follows:

a. The party bringing the [c]laim shall, in writing, set forth the details of its [c]laim and its desire to resolve the dispute in accordance with this [s]ection.

b. The other party shall, within ten . . . days of receipt of the written demand, accept arbitration and set forth at its option, in detail, any counterclaim of its own.

c. [Plaintiff] and Workshop agree to the joinder of any other parties separately retained by [plaintiff] and Workshop (collectively, the "[p]arties"), as a party to any arbitration called for in this [a]greement. [Plaintiff] shall provide for the joinder of these [p]arties in the applicable and respective agreements with other such [p]arties[.]

d. Within twenty . . . days after joinder of all parties, the parties shall agree upon a sole arbiter . . . who shall hear any disputes arising under this [a]rticle. If the parties cannot agree on an [a]rbiter, they agree to use American Arbitration Association ("AAA") rules to appoint an [a]rbiter. The AAA shall make such appointment within

3

ten . . . days of receipt of a written request by either party. The parties agree to share equally the costs of the [a]rbiter associated with the resolution of any dispute.

e. Within ten . . . days of his/her appointment, the [a]rbiter shall hold a hearing, limited to no more than two . . . days per party, which limit shall not be exceeded except for unusual reasons and/or by agreement of the [a]rbiter and the parties.

f. The [a]rbiter shall render his/her written decision within forty-eight . . . hours after the close of the hearing. The decision shall be in writing and may, at the [a]rbiter's option, provide an explanation for such decision.

g. The [a]rbiter's decision shall be final and binding upon all parties and judgment may be entered upon it in the appropriate court in the Supreme Court of the State of New York. If a challenge to the [a]rbiter's decision is made by a party in the applicable court and such challenge is thereafter rejected by appeal or otherwise, the prevailing party shall be entitled to its reasonable attorney's fees and expenses for such proceeding(s).

A separate provision immediately preceding the "Disputes" provision read:

"(17) APPLICABLE LAW This [a]greement shall be governed by and construed

4

in accordance with the laws of the State of New York without reference to its conflicts of laws principles."

Plaintiff hired a contractor in February 2020 to build the home using defendant's designs. However, disputes arose between plaintiff and defendant during the performance of the contract, largely related to billing and workmanship. As a result, the contract was terminated in February 2021 while the construction of the home was still in its infancy. In March 2021, after plaintiff refused to pay defendant's outstanding fees, defendant filed a notice of unpaid balance and a demand for arbitration for a New Jersey Construction Lien on the new home. N.J.S.A. 2A:44A-20 "provides for the filing of a notice of unpaid balance (NUB) or potential construction lien claim to provide notice to persons claiming title to . . . real property of the anticipated filing of a lien claim, as well as an anticipatory priority." Sovereign Bank v. Silverline Holdings Corp., 368 N.J. Super. 1, 3 (App. Div. 2004).

On April 19, 2021, defendant obtained confirmation that it satisfied all procedural requirements under the Construction Lien Law and had the right to a lien for its unpaid services, which lien defendant promptly filed. On November 17, 2022, defendant filed an order to show cause in the Supreme Court of New York under N.Y. C.P.L.R. § 3102(c), seeking an order compelling plaintiff to produce pre-action

A-0566-23

discovery to aid arbitration in connection with the construction lien claim. Defendant sought to compel plaintiff to disclose construction costs to allow defendant to calculate its claim amount for outstanding fees. Plaintiff opposed the order to show cause, arguing, among other things, that the arbitration provision in the contract was unenforceable because of the small typeface, see N.Y. C.P.L.R. § 4544.[1]

While the New York action was pending,[2] on December 16, 2022, plaintiff filed a complaint against defendant in New Jersey asserting the following causes of action: (1) lien discharge pursuant to N.J.S.A. 2A:44A-33 or N.J.S.A. 2A:44A-

---

[1] N.Y. C.P.L.R. § 4544 provides:

> The portion of any printed contract or agreement involving a consumer transaction or a lease for space to be occupied for residential purposes where the print is not clear and legible or is less than eight points in depth or five and one-half points in depth for upper case type may not be received in evidence in any trial, hearing or proceeding on behalf of the party who printed or prepared such contract or agreement, or who caused said agreement or contract to be printed or prepared. As used in the immediately preceding sentence, the term "consumer transaction" means a transaction wherein the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes.

[2] Ultimately, on August 14, 2023, the New York Supreme Court denied defendant's motion.

6

21(b)(10); (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment; (5) professional negligence; and (6) violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -229. The contract and the two addenda were attached to the complaint. Prior to filing an answer, on February 24, 2023, defendant moved to dismiss plaintiff's complaint and compel arbitration. In support, defendant relied on the arbitration provision in the contract. Plaintiff opposed the motion, arguing that the arbitration provision was unenforceable under both New York and New Jersey law.

As to New York law, according to plaintiff's counsel, because the contract fit the definition of a consumer transaction and the font size was smaller than the allowable size to be admitted into evidence under N.Y. C.P.L.R. § 4544, the arbitration provision was unenforceable. As to New Jersey law, counsel asserted the provision was unenforceable based on the font size, legibility, and location.

On June 9, 2023, following oral argument, the judge entered an order denying defendant's motion. In an oral decision, the judge applied the standards articulated in Rockel v. Cherry Hill Dodge, 368 N.J. Super. 577 (App. Div. 2004), and Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430 (2014), and concluded the arbitration provision "should not be enforced." Initially, the judge pointed out that

7

he was adjudicating "a motion to dismiss" that was "limited to the pleadings" and "the contract itself," and heard before any discovery was conducted by the parties.

The judge also posited:

> At the heart of all of it, despite a lot of the repartee back and forth about the sophistication or relative sophistication of [plaintiff], the nature of this transaction, the size of the font, [and] which law should apply, the underlying legal theory here really concerns whether or not either of those provisions were accepted as part of a contract knowingly.

In describing the contract, the judge commented that "[n]one of the things contained within the written portion of what [he] would consider the binding contract reference anything about arbitration, about alternate means of resolving disputes outside of trial, [or] about waiving a statutory right."  In addition, according to the judge, the addendum containing the arbitration provision followed the signature page, and was not labeled "arbitration provision" for clarity, but was "ambiguous[ly]" labelled "[t]erms and conditions."

The judge expounded:

> Regardless of the size of the font, . . . . [i]t does not anywhere specifically say that [plaintiff's] right to a trial is waived, that there's any statutory restrictions on [plaintiff's] right to recover, nor does it specifically set forth in a straightforward way the nature and extent or powers of the arbitrator or how the arbitration would proceed.  It fails on a number of points . . . .

Accordingly, the judge concluded that "there[ was] no proof on the documents presented that there was a knowing . . . determination on behalf of [plaintiff] to consent to arbitration as the sole remedy."

As to the choice-of-law provision, the judge continued:

> My finding regarding choice of law is that New Jersey certainly has a significant interest and nexus to this litigation. The home involved is a New Jersey home. [Plaintiff] is a New Jersey resident. All the work that was performed by . . . defendant essentially ended up actually being performed in New Jersey. The lien in this matter is also in New Jersey.
>
> . . . . I find here the choice-of-law provision is buried in the same attachment that . . . follows the signatures. And there is a denial here that there was a knowing voluntary acceptance of that choice of law.
>
> That being the case, based on the pleadings, which is what I[ am] limited to [hear] in a motion to dismiss, I find that there[ is] no knowing choice of law at this point that I am aware of. And, therefore, New Jersey law applies.

Thereafter, on June 26, 2023, defendant filed a contesting answer, affirmative defenses, and a counterclaim. In the counterclaim, defendant asserted breach of contract and sought a judgment of foreclosure on the construction lien claim. On July 7, 2023, defendant again filed a motion to compel arbitration. In support, defendant submitted a certification by Jonah Kaplan, defendant's Director of Business Development and Communication, along with numerous e-mail chains

9 A-0566-23

showing that the terms of the October 22, 2018, contract were negotiated and finalized after over a month of communications between the parties during September and October of 2018.

In the certification, Kaplan, who "personally negotiated" with plaintiff on defendant's behalf, averred that on September 7, 2018, he emailed plaintiff the initial contract proposal. After a phone conversation with plaintiff, a few days later, on September 12, 2018, Kaplan sent plaintiff another copy of the proposal as a Word document "with [t]rack [c]hanges turned on" so plaintiff could modify the language. On September 14, 2018, plaintiff e-mailed Kaplan a "redlined proposed contract" with "some changes" made by Emily Rokeach, plaintiff's "corporate [g]eneral [c]ounsel who reviewed [the proposal] with [plaintiff]."

According to the certification, the September 14 redline contract included several proposed changes to the entire contract, including revisions to the arbitration provision contained in paragraph eighteen. Specifically, the fee-shifting portion of the arbitration provision was modified to read:

> To the extent the dispute involves a payment dispute, the prevailing party shall be entitled to recover all associated costs, expenses, and fees, including attorneys' fees from the other party.
>
> [(Emphasis added).]

A-0566-23

Plaintiff also submitted a minor modification to paragraph seventeen.[3]

Kaplan certified that on September 21, 2018, plaintiff emailed defendant "an updated redlined proposed contract," reflecting the parties' discussions about further changes to various provisions of the contract. However, there were no further modifications to the arbitration provision. The negotiations continued through September into October 2018, with further changes to various terms unrelated to the arbitration provision. Finally, on October 22, 2018, plaintiff emailed Kaplan "the final executed [c]ontract," writing that he and his wife "[were] excited to share the fully executed agreement."

Plaintiff opposed the motion to compel arbitration but did not file a responding certification. During oral argument conducted on August 25, 2023, the judge confirmed that plaintiff did not submit a certification "in opposition to the allegations made . . . regarding his involvement in the redaction and/or modification of the arbitration clause and the choice of law clause."

Following oral argument, the judge granted defendant's motion to compel arbitration. In an oral decision, the judge stressed that "the crux" of plaintiff's

---

[3] The word "reference" in paragraph seventeen was modified as follows: "(17) APPLICABLE LAW This Agreement shall be governed by and construed in accordance with the laws of the State of New York without <u>re</u>ference to its conflicts of laws principles." (Emphasis added).

11

argument during the prior motion was that plaintiff had no "knowledge, understanding, [or] belief that there was an arbitration provision attached in any way to th[e] contract."  The judge expounded that:

> [Plaintiff] clearly claimed that he was an unknowing participant to an arbitration provision that he did not know existed and/or would not understand and/or . . . would have not agreed to, including the choice of law provision.
>
> I find, based upon a review of all the documents provided, including the documents provided under the . . . certification of . . . Kaplan, which is unrefuted, that those arguments are false, that [plaintiff] did know there was an arbitration provision, that the reason I do[ not] see a certification of [plaintiff] is because he knew it.
>
> He negotiated it and he fully understood the implication of it.  He is not an unsophisticated homeowner. . . .  [A]nd even if he was, the fact that he engaged counsel to help negotiate a provision that would allow for . . . mutual fee responsibility for the arbitration clause clearly shows a . . . very good understanding of what an arbitration means and what the ramifications of losing or winning an arbitration would mean.

As to the choice of law provision, the judge found that it was "made knowingly" and "[would] be adhered to."  As a result, according to the judge, "New York law will apply to th[e] case."  The judge further noted that under either New York or New Jersey law, "knowing" and "understanding . . . the

existence of the arbitration provision will result in an enforceable arbitration provision."  The judge also determined that N.Y. C.P.L.R. § 4544 was "inapplicable" because "not only was the text readable," but plaintiff was able to "read[]," "redact[]," "change[]," and "modif[y]" the arbitration provision.

The judge explained his reason for reaching a different result from his prior decision as follows:

> [I]t is true that the initial motion was a motion to dismiss based solely on the pleadings.
>
> This is not that.  An answer was filed.  This is a substantive motion and I can consider the certification which w[as] provided and the lack of a certification provided in response and I am.

The judge concluded:

> [Plaintiff] knew what he was negotiating away with this arbitration agreement.  He had an attorney help him decide to sign the arbitration agreement and it[ is] also clear that not only did he know about it, he decided to sign the contract despite it, understanding it was there. There can be no doubt about that at this point.

On September 11, 2023, the judge entered a memorializing order granting defendant's motion to dismiss without prejudice plaintiff's complaint and defendant's counterclaim in favor of arbitration.  The judge also determined that bifurcation of the construction lien action was not warranted because "all of the damages in th[e]

case do result directly from the contract," making it appropriate to adjudicate all the issues at the arbitration at the same time. This appeal followed.

On appeal, plaintiff raises the following issues for our consideration:

> I. THE TRIAL COURT ERRONEOUSLY RECONSIDERED ITS PRIOR HOLDING THAT THE ARBITRATION PROVISION AND CHOICE OF LAW PROVISION WERE UNENFORCEABLE AS A MATTER OF LAW[.]
>
> II. THE TRIAL COURT ERRONEOUSLY APPLIED THE CHOICE OF LAW PROVISION AND NEW YORK LAW[.]
>
> III. THE TRIAL COURT ERRONEOUSLY ENFORCED THE ARBITRATION PROVISION BY MISAPPLYING THE PAROL EVIDENCE RULE[.]
>
>> A. The Trial Court Expanded The Parol Evidence Rule Beyond Its Long-Established Construction[.]
>>
>> B. This Court Must Preclude The Use Of Parol Evidence To Alter The Facially Unenforceable Arbitration Provision[.]
>
> IV. THE TRIAL COURT ERRONEOUSLY FOUND THAT THE ARBITRATION PROVISION IS ENFORCEABLE UNDER NEW YORK LAW[.]

## II.

The enforceability of an arbitration agreement is a question of law, which we review de novo. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020). "Similarly,

14

the issue of whether parties have agreed to arbitrate is a question of law that is reviewed de novo." Jaworski v. Ernst & Young U.S. LLP., 441 N.J. Super. 464, 472 (App. Div. 2015). Likewise, we review de novo choice-of-law determinations. Cont'l Ins. Co. v. Honeywell Int'l., Inc., 234 N.J. 23, 46 (2018). Thus, we exercise de novo review of a trial court's order compelling arbitration, Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019), and "[i]n reviewing such orders, we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level," Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). That preference, "however, is not without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001).

Arbitration agreements are subject to customary contract law principles. Atalese, 219 N.J. at 442. Under our State's defined contract-law principles, a valid and enforceable agreement requires: (1) consideration; (2) a meeting of the minds based on a common understanding of the contract terms; and (3) unambiguous assent. Id. at 442-45. Consequently, to be enforceable, the terms of an arbitration agreement must be clear, and any legal rights being waived must be identified. Id. at 442-43; see also Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319-20 (2019). "No particular form of words is

A-0566-23

necessary to accomplish a clear and unambiguous waiver of rights." Atalese, 219 N.J. at 444. If, "at least in some general and sufficiently broad way," the language of the clause conveys that arbitration is a waiver of the right to bring suit in a judicial forum, the clause will be enforced. Id. at 447; see also Morgan v. Sanford Brown Inst., 225 N.J. 289, 309 (2016) ("No magical language is required to accomplish a waiver of rights in an arbitration agreement.").

Here, we agree with the judge that the arbitration provision conformed to the dictates of Atalese, satisfied the elements necessary for the formation of a contract, and was therefore enforceable. Plaintiff argues "the [a]rbitration [p]rovision is ambiguous, lacking an explanation, and inconspicuously sized and positioned within the [c]ontract." However, plaintiff's claims are undermined by the fact that the overwhelming and undisputed evidence in the record clearly establishes that plaintiff was aware of, understood, knowingly assented to, and even negotiated terms in the arbitration provision.

"An arbitration agreement is valid only if the parties intended to arbitrate because parties are not required 'to arbitrate when they have not agreed to do so.'" Kernahan, 236 N.J. at 317 (quoting Volt Info. Scis., Inc. v. Bd. of Trs., 489 U.S. 468, 478 (1989)). As such, "[a] court's objective in construing a contract is to determine the intent of the parties," and, in that quest, "'the court

16

must consider the relations of the parties, the attendant circumstances, and the objects they were trying to attain.'" Id. at 320-21 (quoting Tessmar v. Grosner, 23 N.J. 193, 201 (1957)).

In County of Passaic v. Horizon Healthcare Services, Inc., 474 N.J. Super. 498, 501 (App. Div. 2023), where the parties were a county and a health insurance company with a longstanding contractual relationship involving the management of the County's self-funded health benefit plan, we rejected the County's assertion that the arbitration provision in dispute was "unenforceable because it lack[ed] the explicit waiver of access to the courts prominently featured" in Atalese. We reasoned that "even though the arbitration provision does lack such an explicit waiver, the County is a sophisticated contracting party and is not – as in Atalese and other authorities – an employee or consumer lacking sufficient bargaining power to resist the extraction of an agreement to arbitrate." Ibid.

Similarly, in Grandvue Manor, LLC v. Cornerstone Contracting Corp., 471 N.J. Super. 135 (App. Div. 2022), we deemed the contractor corporation and couple who, through an LLC, contracted for construction of a $10 million home, "sophisticated parties who elected arbitration clearly and unambiguously." Id. at 139-40, 146. As a result, we upheld the arbitration

clause which clearly delineated that the parties had a choice between arbitration or "'[l]itigation in a court of competent jurisdiction.'" Id. at 140.

Here, there was no contract of adhesion or unequal bargaining relationship between the contracting parties. Unlike a form consumer contract, this contract, including the arbitration provision, was individually negotiated by plaintiff who was assisted by counsel and "versed in the meaning of law-imbued terminology about procedures." Kernahan, 236 N.J. at 319. Accordingly, despite the absence of an explicit waiver of access to the courts, this is a setting where plaintiff is "presumed to understand . . . what was being agreed to," including the provision's terms and legal effect. Id. at 320-21.

Plaintiff argues that "to overcome" the deficiencies in the arbitration provision, the judge erroneously considered "parol evidence which, as a matter of law, cannot alter the substance or meaning of the [a]rbitration [p]rovision." "In general, the parol evidence rule prohibits the introduction of evidence that tends to alter an integrated written document." Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 268 (2006) (citing Restatement (Second) of Conts. § 213 (Am. L. Inst. 1981)). It "is a rule of substantive law, not a rule of evidence." Ibid.

As such, in Conway, our Supreme Court explained:

[W]e permit a broad use of extrinsic evidence to achieve the ultimate goal of discovering the intent of the parties. Extrinsic evidence may be used to uncover the true meaning of contractual terms. It is only after the meaning of the contract is discerned that the parol evidence rule comes into play to prohibit the introduction of extrinsic evidence to vary the terms of the contract.

[Id. at 270.]

Here, the judge did not rely on parol evidence to alter the terms of an integrated contract. Instead, the judge considered Kaplan's certification and email attachments as relevant to the circumstances in which the contract was entered, which he was permitted to do. See Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301 (1953) ("Evidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement.").

Plaintiff also argues the judge erred in reversing his "prior determination" when he adjudicated the first motion "without conducting the required analysis for reconsideration of interlocutory orders" under Rule 4:42-2. "Under Rule 4:42-2, interlocutory orders are 'subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice.'" In re Est. of Jones, 477 N.J. Super. 203, 216-17 (App. Div. 2023) (quoting Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021)). "Reconsideration under this rule offers a 'far more liberal approach' than Rule

4:49-2, governing reconsideration of a final order." JPC Merger Sub LLC v. Tricon Enters., Inc., 474 N.J. Super. 145, 160 (App. Div. 2022) (quoting Lawson, 468 N.J. Super. at 134).

"Interlocutory orders are always subject to revision in the interests of justice" and a trial court "'may revise them when it would be consonant with the interests of justice to do so.'" Lombardi v. Masso, 207 N.J. 517, 536 (2011) (quoting Ford v. Weisman, 188 N.J. Super. 614, 619 (App. Div. 1983)). Indeed, where "the judge later sees or hears something that convinces him[ or her] that a prior ruling is not consonant with the interests of justice, he[ or she] is not required to sit idly by and permit injustice to prevail" but "is empowered to revisit the prior ruling and right the proverbial ship." Id. at 537.

That is exactly what occurred here. Relying on the arbitration provision in the parties' agreement, defendant moved pre-answer to compel arbitration and the judge denied the motion, limiting his findings of fact and conclusions of law to the pleadings and the contract itself. After defendant moved post-answer to compel arbitration and submitted a supporting certification, sufficient evidence existed in the motion record to support the judge's findings that plaintiff assented to the arbitration and choice of law provisions based on his counseled negotiations with defendant prior to executing the agreement. Therefore, based

on the newly adduced evidence, the judge revised his decision consonant with the interests of justice. See R. 4:6-2(a) (permitting defense to move to dismiss complaint for lack of jurisdiction, which permits consideration of matters outside the pleadings without converting the motion to one for summary judgment); cf. R. 4:6-2(e) (permitting defense to move to dismiss complaint for "failure to state a claim upon which relief can be granted," which requires converting the motion to one for summary judgment if matters beyond the pleadings are presented).

Plaintiff also asserts that the judge "conducted an inadequate choice of law analysis" "to determine which states['] law should apply," "rendering the entirety of [his] decision to compel arbitration a nullity." Even if the judge was correct in applying New York law, defendant argues he erred in finding the arbitration provision enforceable under New York law.

> "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." [Instructional Sys., Inc. v. Comput. Curriculum Corp., 130 N.J. 324, 341 (1992)].

> [T]he law of the state chosen by the parties will apply, unless either:

> (a) the chosen state has no substantial relationship to the parties or the

transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective choice of law by the parties.

> [Id. at 342.]

[Grandvue Manor, LLC, 471 N.J. Super. at 142 (second alteration in original).]

Here, the parties clearly and unambiguously chose to be governed by New York law. Defendant is a New York company and several planning meetings between the parties occurred in New York. We conclude that New York has sufficient contacts with the parties to make the choice of law governing the arbitration clause "a reasonable contractual term, not offensive to any previously enunciated or presently viable public policy of this forum," Kalman Floor Co. v. Jos. L. Muscarelle, Inc., 196 N.J. Super. 16, 22 (App. Div. 1984), and we discern no principled basis in law or fact why the law of the state chosen by the parties should not apply.

Next, we consider whether the arbitration provision would be enforceable under New York law. New York law regarding the enforceability of contractual

22

arbitration provisions is not unlike New Jersey law, and New Jersey courts are not unfamiliar with New York law. In Grandvue, we explained:

> [W]ith respect to the effect of an arbitration agreement, New York law provides:
>
>> A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award. In determining any matter arising under this article, the court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute.
>
>> [N.Y. C.P.L.R. § 7501 (2021).]
>
> The New York Court of Appeals elaborated as follows:
>
>> [T]he announced policy of [the State of New York] favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties. "One way to encourage the use of the arbitration forum" we recently noted "would be to prevent parties to such agreements from using the courts as a vehicle to protract litigation. This conduct has the effect of frustrating both the initial intent of the parties as well as legislative policy[.]" Matter of Weinrott (Carp), 32 N.Y.2d 190, 199 (1973). To this

23

end the Legislature has assigned the courts a minimal role in supervising arbitration practice and procedures.

Generally it is for the courts to make the initial determination as to whether the dispute is arbitrable, that is "whether the parties have agreed to arbitrate the particular dispute." Steelworkers v. Am. Mfg. Co., 363 U.S. 564, 570-71 (1960). The ultimate disposition of the merits is of course reserved for the arbitrators and the courts are expressly prohibited from considering "whether the claim with respect to which arbitration is sought is tenable, or otherwise pass(ing) upon the merits of the dispute[.]" C.P.L.R. § 7501. Ideally then the courts should confine themselves to the arbitration clause and leave the overall contract to the arbitrators. This, of course, is facilitated when the arbitration clause specifies the issues which are subject to arbitration and those which are not.

. . . .

. . . . Basically the courts perform the initial screening process designed to determine in general terms whether the parties have agreed that the subject matter under dispute should be submitted to arbitration. Once it appears that there is, or is not a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court's inquiry is ended. Penetrating definitive analysis of the scope

24

of the agreement must be left to the arbitrators whenever the parties have broadly agreed that any dispute involving the interpretation and meaning of the agreement should be submitted to arbitration[.]  See, e.g., Matter of Exercycle Corp. (Maratta), 9 N.Y.2d 329, 334 (1961).

[Nationwide Gen. Ins. Co. v. Invs. Ins. Co. of Am., 332 N.E.2d 333, 335 (N.Y. 1975).]

Thus, New York law instructs that courts perform an initial screening "to determine in general terms whether the parties have agreed that the subject matter under dispute should be submitted to arbitration." [Ibid.]

[Grandvue, 471 N.J. Super. at 143-44 (all but first and last alteration in original).]

Here, the parties clearly and unambiguously agreed to submit to arbitration "any dispute arising out of the services in this [a]greement."  Because the dispute arose out of the services in the agreement and plaintiff never questioned the scope of the arbitration agreement, we conclude a New York court would likely enforce the arbitration provision.  See Singer v. Jefferies & Co., 575 N.E.2d 98, 99-101 (N.Y. 1991) (upholding an arbitration provision covering "any controversy arising out of the business of the employer"); Atlas Drywall Corp. v. Dist. Council of N.Y.C. & Vicinity of United Brotherhood of Carpenters & Joiners, 576 N.Y.S.2d 319, 320-21 (App. Div. 1991) (upholding

an arbitration provision covering "'all disputes between [the parties], both within and without the agreement'" (alteration in original) (emphasis omitted)).

Plaintiff reprises his argument that the arbitration provision would be unenforceable under New York law because the provision would be inadmissible under N.Y. C.P.L.R. § 4544, "prohibit[ing] the admission of exhibits with text that is not clear and legible or is smaller than eight-point font" in disputes involving a consumer transaction or a residential lease.

In Drelich v. Kenlyn Homes, Inc., 446 N.Y.S.2d 408, 409 (App. Div. 1982), the court interpreted a "consumer transaction" within the meaning of the statute as follows:

> Pursuant to the provisions of [N.Y. C.P.L.R. § 4544], a "'consumer transaction'" is one "wherein the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes". If, in fact, the subject written contract was part of a consumer transaction as so defined and the print size failed to comply with the minimum requirements set forth in the statute, then the contract may not be received in evidence upon behalf of defendant.

The Drelich court concluded that the contract at issue in the case, which involved the sale and construction of a home, did not qualify as a consumer transaction under the statute. Id. at 410. The court explained:

26

The express terms of the statute in question establish that it is applicable first to consumer transactions for goods, property and services, and second, to leases for residential property. The statute reflects the legislative intent to regulate transactions for such property and services which are primarily personal in nature in order to protect the unwary consumer from the sharp practices of various dubious business enterprises which deal in such services and goods which are attractive to consumers. In addition to these personal transactions, the statute is also made applicable to leases for residential property, which, as chattels real, constitute personal property. To extend the statute so as to make it applicable to a contract for the construction and sale of a one-family dwelling would require a strained reading of the express language of the statute and would require that such meaning be determined by implication. This we decline to do, and we determine that such a contract is not within the scope of a consumer transaction since it is not included in the express terms of the statute in question.

[Ibid.]

For the same reasons, we are satisfied that N.Y. C.P.L.R. § 4544 does not apply to the transaction here. Designing a home and building it are part and parcel of the same process. To extend the statute to encompass a contract regulating the former would likewise require a strained reading of the statute's express language.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

27